## Mucci, By, etc. v. Hazard Blue Grass Coal Corporation, et al.

(Decided December 18, 1925.)

### Appeal from Perry Circuit Court.

1. Railroads—Operation of Coal Train Held Not Negligent as to Infant Trespasser.—In action by infant for injuries sustained by being thrown from defendant's coal train, where evidence showed that infant was warned to keep away from place of accident, that parents knew of danger, that defendant did not and could not reasonably have been expected to see infant on train, and that defendant had no previous notice or experience putting them on notice of infant's acts, defendant owed no duty to infant trespasser at time and place of accident, and hence is not guilty of negligence.

2. Railroads—Trespassers on Coal Cars Not Entitled to Care Except After Knowledge of Danger.—A coal company, operating a short

line and carrying no passengers or freights. except for own purposes, owes no duty to trespassers on tracks or cars, except humane duty to exercise ordinary care not to injure any such trespasser after having knowledge of his danger.

3. Railroads—Warning to Parent of Danger to Child Held Unnecessary.—Where infant's parents knew of child's habit of playing about place of accident, and had many times taken child from there, warning to parents to keep infant off defendant's premises was not essential to relieve defendant from liability for injury to infant by fall from coal car.

WOOTTON, SMITH & WOOTON and NAPIER & HELM for appellant.

FALUKNER, STANFILL & FAULKNER for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant, an infant suing by his next friend, was on the 4th day of June, 1918, injured by falling off of one of appellant's coal cars, and being run over by some of the cars in a coal train operated between appellant's mine and its coal tipple within the city of Hazard. The infant was at the time forty months of age.

The miniature coal train was run from the mouth of the mine down a small stream only two or three hundred yards to the coal tipple, and was operated over either a narrow gauge railroad track or a tramway. On either side of the short distance where this track ran were miners' houses, and a short distance from the mouth of the mine where the railroad crossed the small stream from one side to the other there was an improvised footbridge used considerably as a sort of passageway between points within the mining village, and in going to and from the major part of the city. One end of this bridge was within two or three feet of the railroad track, and it was likewise situated at or near a comparatively level place. At the time of the injury William Gilford was the servant of the coal company in operation of its motor train, and was joined as defendant with the corporation.

The petition as amended alleges that defendants negligently and carelessly ran the motor and motor cars and mine cars over the plaintiff, and that the accident occurred within the city limits of Hazard, and at a point on the company's track used as a crossing by the general public in going to and from the courthouse and other pub-

lic places in the city; that a great number of people were constantly passing over the crossing and along the track at the point of the accident, and that those in charge of the operation of the motor cars saw the infant plaintiff before the accident, or could have seen him with the exercise of ordinary diligence and prevented the accident by such exercise. Then in a separate paragraph the amendment alleges that at the point of the accident children were in the habit of passing and congregating, and that the motor and mine cars passing there were of easy access to the children, and inviting to them as well as attractive and alluring, and were calculated to induce them and did induce the plaintiff to examine, look at and crawl upon the wheels and cars, which facts defendant knew at the time of the accident, or could have known by the exercise of reasonable care.

All of these allegations were put in issue by the defendant, and in addition contributory negligence was asserted, and on a trial, at the conclusion of the plaintiff's evidence, the court directed a verdict for the defendants, and the correctness of that ruling is the only question involved. The evidence for plaintiff tended to show that there were three or four small boys in the little mining town that were in the habit of playing about the immediate locality where the accident occurred, and that appellant was one of them; but it failed to show that upon any previous occasion either appellant or any of the other boys had been seen to climb upon the cars of the coal trains. Upon the occasion in question, however, the coal train had stopped at the point indicated when appellant and his older brother, about six years old, reached the place. The evidence likewise shows that while these boys were in the habit of playing about that place and near the railroad or tramway, it shows they never had been seen playing upon the track. A few minutes before the accident appellant alone had been about this point playing, and his mother, whose home was a short distance away, came there and took him away, and from this it is apparent that she knew he was in the habit of playing there and appreciated the danger of it; then a few minutes later when the train was standing there appellant and his older brother again came to the place and the older brother climbed upon one of the standing cars, and thereafter appellant also did, and about the time he climbed upon the car the train started and he fell off. There is no evidence either that the motorman or any other of the

train operatives, or any agent or employe of the coal company, saw either of these boys at or about the time of the injury, or had seen them immediately or any short time theretofore. The evidence also shows that upon the occasion in question, in addition to the motorman, there was a flagman on the train, but that they both operated from the small engine. Appellant climbed upon the sixth or seventh coal car from the engine, and one witness states that there was no obstruction between the engine and that coal car to prevent the motorman or flagman from observing the fact that appellant was on the train, but upon cross-examination the witness admits that the duties of both the motorman and the flagman while situated in the engine required them to be in such position that their backs would have been to the part of the train upon which appellant had climbed, and in addition he says there was a decided curve between where the engine was located and the car upon which appellant climbed.

So that we have an infant trespasser climbing upon a standing coal car, and unobserved either by any employe operating the train or other employe of the company; and we have in addition two train operatives in the observance of their duties in such position that they could not have been reasonably expected to see him.

There is also evidence that these boys, and appellant in particular, had been warned many times by the train operatives and others to remain away from this place; and while there is no evidence that this boy's parents or either of them had been notified of their frequent presence at that place, and warned of the danger, it is made apparent from the evidence that the plaintiff's mother knew of his custom to play about that place, and had frequently gone there and taken him home. She must therefore have either been warned, or, she must have had knowledge of the situation without warning.

The coal company operated this short line from the mouth of its mine to its tipple over its own property, and it was operated solely for the purpose of carrying coal from the mine to the tipple. It carried no passengers and no freight, except the coal, and carried that only over its own road operated over its own land. Obviously under these conditions it owed no duty to trespassers upon its tracks and cars, except the humane duty to exercise ordinary care not to injure any such trespasser after having knowledge of his danger. No lookout duty was required, and although its operatives may be presumed

to have known that at the point indicated a few boys were accustomed to play, yet there is a total lack of evidence that either of them, or any other person, had ever upon any previous occasion at that place boarded or attempted to board any of its cars. We are impelled, therefore, to hold that in the absence of previous notice or previous experience that would have put them upon notice, the train operatives owed no duty to this infant at the time and place of the accident; they neither saw him nor were they in position to have seen him, and as no other boy had ever undertaken to board their cars, although they played about this place, they owed no duty to investigate before starting the train.

The facts are essentially different from those in the Tupman case, 200 Ky. 88; there the driver of the truck knew just before he backed the truck over the infant that the infant had been on the sidewalk right at the end of the truck, and he knew that the infant had just a short time before had his little wagon attached to the truck with the purpose of taking a ride when it should drive away, and so knowing, without further investigation backed his truck over him. Here there is no evidence that the train operatives or any other employe of the company either knew that appellant had climbed upon its cars, or that he was in that locality.

Nor are the facts in any wise similar to those in L. & N. R. R. Co. v. Steele, 179 Ky. 605. In that case the infant was injured while attempting to jump on a moving train at a point where children had the habit of jumping upon that particular train while moving, which habit was known to those in charge of the train and had actually been encouraged by them, and in the light of this habit and encouragement by the train officials, the duty was imposed upon the company to anticipate their presence about the train, and to exercise ordinary care to discover such presence and prevent injury to them.

In the case of Lyttle v. Harlan Town Coal Co., 167 Ky. 345, an infant nine years of age while playing with other children at the base of a steep hill was killed by a large rock that was rolled down the side of the hill by one of defendant's employes, and it was held that while an infant under ordinary conditions occupies the same attitude as trespassing adults, that when one knows of the habit of children playing on its premises, and being warned that they are liable to be hurt by his method of doing business, it is incumbent upon him to warn the parent of the chil-

dren to keep them off its premises, or in the absence of such warning to exercise ordinary care not to harm them, although they were not there by his express invitation or consent; and it was likewise held that where one maintains on his premises at an exposed place appliances attractive to and at the same time dangerous for use by children, and he permits them without objection or warning to congregate there, he must keep it in reasonably safe condition for the use to which children put it. In this case the warning to the infants themselves, including appellant, is distinctly shown, and while it is not shown that any warning was given to the children's parents, it is shown, without contradiction, that one of the parents knew of appellant's habit to play about this place, and had many times gone and taken him from there. Having such knowledge the warning was not essential.

It is apparent that under the facts disclosed the company owed no duty to the trespassing infant, and owing no duty, it could have been guilty of no negligence.

Judgment affirmed.