# Trent, By et al v. Norfolk & Western Railway Company.

(Decided December 14, 1915.)

## Appeal from Boyd Circuit Court.

1. Railroads—Obstruction of Public Crossing—Duty to Give Notice or Signal.—A railroad company after having obstructed a public road crossing beyond a lawful time owes the duty to persons attempting to go through, over or under its trains at such crossing, not to injure them by starting its train without reasonable notice or signal of its intention so to do.

2. Railroads—Obstruction of Public Crossing—Contributory Negligence.—Even if a railroad company has obstructed with its cars a public crossing beyond a lawful time, an adult attempting to

cross through, over or under the cars at such crossing is guilty of contributory negligence as a matter of law, if a live engine is attached to or about said cars.

3.   Railroads—Obstruction of Public Crossing—Injury to Child Eight Years Old—Contributory Negligence.—A child eight years of age attempting to cross through a train of cars under such circum-stances, held not guilty of contributory negligence as a matter of law, but that it is a question of fact for the jury.

GOODYKOONTZ & SCHERR and C. M. WHITT for appellant.

HOLT, DUNCAN & HOLT and J. R. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellant, McKinley Trent, by his next friend, sued appellee, Norfolk & Western Railway Company, in the Boyd circuit court to recover damages for the loss of his legs in an accident occurring in Mingo county, West Virginia. At the conclusion of the testimony, the court below gave to the jury a peremptory instruction to find for appellee railway company, from which judgment said Trent is appealing.

The facts are these: On the 6th day of September, 1902, McKinley Trent, then eight years of age, resided with his mother and father on Steep Gut Branch, a tributary to Tug Fork of the Big Sandy, in Mingo county, West Virginia. He alleges, and the railway company denies, that there was a public road leading past his father's house crossing appellee's railway track at a distance of from 200 to 300 yards from his home, and then running along the lower side of the railroad track, and nearly parallel thereto, to Sand Siding, a small station at which freight was left from local freight trains at the owners' risk, the company maintaining no agent at the place. On said day, September 6, 1902, the mother of McKinley Trent sent him; his brother, eleven years of age, and his sister, who was two or three years younger than himself, from their home to Sand Station to see if some freight had been deposited at this station for them by the local freight. These three children went down this alleged highway on their way to Sand Station until they came to the railroad track, where, according to the testimony of appellant and his brother, they found the railroad crossing obstructed by one of appellee's freight trains. They allege that after waiting for about thirty minutes for the freight train to be moved off of the cross-

ing, McKinley Trent attempted to cross betwen two freight cars at the railroad crossing, but, that, just as he had taken hold of one of the handholds and had gotten in the stirrup, the appellee railway company, without giving any notice or signal, started the train with such a violent jerk that he lost his footing in the stirrup; was thrown to the ground and one of his legs was run over and cut off; that he held on to the handhold for some little distance when, becoming exhausted, he fell to the ground and his other leg was cut off.

Appellant assigns three grounds for a new trial, but his counsel agree in their brief that only one of these grounds need be considered here, and that is—that the court erred in granting a peremptory instruction requiring the jury to find for the appellee.

This cause of action having arisen in West Virginia, is controlled by the laws of that state and same will be applied to the facts proven as fully as if the suit was being tried in West Virginia, except that in the absence of evidence showing the common law of West Virginia to be different from the common law of Kentucky, it will be presumed that the common law of West Virginia is the same as that of our own State. Thacker v. N. & W. Ry. Co., 162 Ky., 337; Blair v. N. & W. Ry. Co., 162 Ky., 833.

In determining whether or not the court below erred in granting a peremptory instruction, it will be necessary to consider the following questions:

1.    Was appellant injured at a public road crossing?

2.    Was the road obstructed by appellee's train for an unreasonable length of time?

3.    If questions one and two are answered in the affirmative, would the facts proven support a finding for the appellant?

If all three of these questions, on the proof, can be answered affirmatively, the court erred in giving the peremptory; if any one of them must be answered in the negative, the instruction was proper.

1.    *Was appellant injured at a public road crossing?*

Appellant introduced section 31, chapter 43 of the Code of West Virginia, the case of Bell v. Cox, 29 W. Va., 407, and the case of Campbell v. City of Elkins, 58 W. Va., 380, in proof of the law of West Virginia as to what constitutes a public road. The appellee introduced the case of Talbott v. King, 32 W. Va., 7, and the case of

State v. Dry Fork R. Co., 50 W. Va., 235, in support of its contention about the law of West Virginia on the same subject. There is no conflict in these decisions, and we may state the law of West Virginia for our purpose here to be as stated in Talbot v. King, *supra,* namely:

"Mere user of a road will not make it a public road, under section 31, C. 43, code 1887. The user must be accompanied either by an order of the county court recognizing it in some way as a road, or the road must be worked by a surveyor as such. Dedication by the land owner, though accompanied by public user, will not make it a public road, unless the dedication be accepted either by the county court in its order book or by a surveyor's working it."

Appellant introduced the orders of the Mingo county court of April 10, 1895, assigning surveyors to certain road precincts, and introduced evidence which seems to us to prove that the road in controversy is included in road precinct No. 3 or No. 4 therein established, and in addition offered evidence tending to show that this road was used and had been worked by a road surveyor as a public road. While this evidence may not be conclusive, we are of the opinion that it is sufficient to have required the trial court to have submitted this question to the jury for decision as one of the issues of fact involved in this case.

2. *Was the road obstructed by the train of appellee for an unreasonable length of time?*

Appellant introduced section 45 of chapter 43 of the Code of West Virginia, which declares it to be a misdemeanor to obstruct or injure any public road, and it is agreed by counsel that in order for the obstruction to be within the purview of this statute, it must have existed for an unreasonable length of time, there being no statute in West Virginia fixing the time a railway train may lawfully obstruct a public road crossing. And upon this question we may state it to have been proven in this case to be the law of West Virginia that it is unlawful for a railroad company, or any one, to obstruct a public road crossing for an unreasonable length of time. Appellant introduced two witnesses who testified that appellee's train obstructed the alleged crossing in this case for about thirty minutes. This testimony is contradicted by three witnesses for appellee who testified it was obstructed for a very short time. This proof raises

the question of whether appellee did, in fact, on this occasion obstruct this crossing for an unreasonable length of time, and it seems clear to us that the trial court should have submitted this question to the jury for its decision as one of the issues of fact involved in this case. Appellee upon this point introduced sub-section 6 of section 50 of chapter 54 of the Code of West Virginia, authorizing railroads "to construct its railroad across, along or upon any stream of water, water-course, street, highway road, turnpike or canal, which the route of such railroad shall intersect or touch." This statute, as we understand it, simply declares a railroad company's right to take a highway road, among other things, for its use when necessary in the construction of its railroad, and has no application to a case such as this. The question here does not involve the company's rights when constructing its railroad, but affects only its duties when operating same.

Having reached the conclusion that these two questions are questions of fact and should have been submitted to the jury unless some other controlling reason rendered it unnecessary, we will now consider the third question involved, namely:

3. *Even if the jury should believe that this accident occurred on a public railroad crossing after appellee had obstructed it an unreasonable length of time, was the evidence of appellee's negligence sufficient to support a verdict in favor of plaintiff?*

The solution of this question requires a determination of the duty, if any, that the appellee owed the appellant under the circumstances as shown by the proof. The appellee insists that the appellant was a trespasser to whom it owed no duty whatever unless the operators of the train knew of his presence upon the train in a place of peril, and of this it is conceded there is no proof; that there was no duty resting upon it to examine its train in order that he might be discovered, give signals of the proposed starting thereof, or provide a watchman to keep appellant from getting upon its train. In support of this contention appellee offers the case of Conrad v. B. & O. Railroad Co., 64 W. Va., 176, wherein the law of West Virginia is announced as follows:

"The law imposes no liability upon a railroad company for maintaining, upon its private property, an unlocked, unfastened and unguarded turntable, in favor of

children, though located in a thickly-settled community, near a public street and on ground on which children are wont to congregate for play. * * * Nobody but the owner, his servants and licensees can ever be rightly on or about it. As long as all others stay away from it, the working of injury to them or their property by it is an impossibility.''

From the above it will be seen that the courts of West Virginia have declined to adopt the doctrine announced by the Supreme Court of the United States and courts of last resort of many states, including Kentucky, in what are known as turntable cases. In all of such cases the complainant is a trespasser without right of any kind, or at any time, to be upon the premises of the railroad company where a dangerous machine attractive to children is located, and, even in jurisdictions fixing a liability upon the company, he is regarded as a trespasser. Our conception of the case at bar renders it entirely dissimilar from these turntable cases. A railroad crossing is not the private property of the railroad company, and its right to the use of its tracks at such a crossing is subject to many limitations, and in the case at bar the appellant had the right to the use of that crossing, if a public road crossing, except when appellee had it obstructed for a reasonable length of time. The appellee's right to the use of that crossing was paramount to the appellant's right to use it only when it occupied it first, and then for only a reasonable length of time. If the appellee had occupied it beyond a reasonable length of time, then appellant at the time of the accident had the better right to its use. Can it be said under such circumstances that appellant was a mere trespasser upon appellee's right-of-way or its cars to whom appellee owed no duty? We think not. The only other West Virginia laws proven in this case with reference to this question are the cases of Carnefix v. K. & M. R. Co., 82 S. E. R., 219, and Dempsey v. N. & W., 69 W. Va., 271, proven by appellant. These cases enforce a liability upon a railway company for a failure upon the part of its employes to observe a recognized duty to trespassers, but they have no application to the case at bar, and do not define the duties a railroad company owes to one situated as the appellant in this case. These three cases being all of the West Virginia law proven here upon this question, we presume the court of last resort of West

Virginia has not declared what the common law of West Virginia is as to what duty, if any, is owed by a railroad company to persons on or about its cars as in the instant case in the matter of giving signals or warnings of the starting thereof, or providing watchmen to prevent persons going thereon, and we will, therefore, apply the common law in force in this State. *Vide* Thacker v. N. & W., and Blair v. N. & W. Railway Company, *supra.*

Assuming that this court would reach this view with reference to the law of this case, counsel for appellant cites I. C. R. Co. v. Dupree, 138 Ky., 459, wherein it was held that the trial court erred in refusing to give a peremptory instruction where a five-year-old child broke away from her nurse and ran to a railroad crossing in front of an approaching train, and was injured before the engineer in charge of the train could stop it, the court holding in that case that the proximate cause of the injury was the child breaking away from her nurse, and not the speed at which the train was being drawn, and that the engineer could not be held to be negligent because he could not anticipate that the child might do this. We do not think the facts in that case analogous to those involved in the present case.

Counsel for appellee also relies upon the case of Smartwood's Guardian, etc. v. L. & N. R. Co., 129 Ky., 251, wherein a child eight years old was injured by jumping on a moving train of defendant in the city of Covington at a place where children had been in the habit of jumping on trains; and contend with much force that this case exactly supports their contention in the present case, quoting therefrom as follows:

"Now, as to the cars, there is no such thing as the public's acquiring the right to use them by prescription. There is no precedent for such claim, and no principle in law analogous to it. All who venture unbidden by the company and unknown to it upon its trains do so at their own peril, as they have no right, and the company, therefore, owes them no duty in such case."

The present case is clearly differentiated from that case, because there the question decided is that the plaintiff had no right whatever upon defendant's car; that no such right can be acquired by prescription, while here, assuming appellee had obstructed a public road crossing beyond a reasonable time, we are attempting to define what, if any, right appellant had to get over the unlaw-

ful obstruction in the public crossing, if he used such prudence and care in so doing as he was capable of using, and, can we say, as was said in the Smartwood case, that the appellant was a mere trespasser and ventured upon appellee's train unbidden by it and unknown to it. May not a railroad company by using a public crossing beyond a lawful time be charged with having invited persons who are rightfully entitled to its use to climb over or through its cars, especially children, and with knowledge of their presence?

The precise question raised here has not so far as we have been able to find been passed upon by this court. In Southern Railway Co. v. R. T. Clark, 105 S. W., 384, where an adult, in attempting to cross through a train at a public crossing, was injured, this court said:

"Appellee and the appellant company had an equal right to the use of the public road at the crossing, but the company being in possession of it in a lawful manner, for a lawful purpose, and *without unnecessary delay* when appellee attempted to cross over between the cars, he became a trespasser."

In this same opinion the court cited with approval from Thompson's Commentaries on the Law of Negligence, vol. 2, section 1674 (32 K. L. R., 71), the following:

"Injuries received while making such attempts have been very frequent. The view of the writer—for whatever it may be worth—on this question is this: If the train is lawfully obstructing the crossing—that is to say, if it has not obstructed it for a greater length of time than prescribed by statute or ordinance, or, in the absence of statute or ordinance, for an unreasonable length of time—then, a pedestrian who attempts to continue his journey upon the highway, by climbing over or between the cars does so at his own risk. The railroad company is under no obligation to keep a special lookout for him or to take special pains to provide for his safety; but his position is substantially that of a trespasser upon its property, and it is not different in law, from what it would be if the train were not obstructing a highway crossing. But, after the train has obstructed the crossing beyond the length of time prescribed by statute or ordinance, or beyond a reasonable length of time, in the absence of statute or ordinance, then the railway company is guilty of an unlawful obstruction of the highway, which is an indictable nuisance, the right of

passage on the part of the public is restored and if pedestrians undertake to exercise that right by climbing over the obstructing train, the railroad company must see to it that it does not kill them or injure them while so doing, by an affirmative act of its own, namely by starting forward its train without giving them any warning of its purpose to do so, or without looking out for their safety in any way. American courts have, however, held with great unanimity that in such cases the injury is to be ascribed as a matter of law to the contributory negligence of the traveler, and there can be no recovery of damages against the railroad company.''

In Jones v. I. C. R. Co., 31 Ky. L. R., 825, this court held:

''When a train of cars is standing temporarily, as these were, on a crossing, and there is a live engine near by or attached to the train liable to move them at any moment, persons who desire to cross the track do so at their own peril if they make the attempt by going under, climbing over or passing between the cars; and the company will not be liable for injuries received by them unless their dangerous condition is discovered in time to prevent accident. The presence of cars and an engine either attached to them or in the immediate vicinity for the purpose of moving them is such an obvious warning of danger to *adult* persons attempting to cross under, over or between them that to do so is gross negligence, and there can be no recovery for injuries received under circumstances like these. * * * We are of opinion that appellant in attempting to cross the track under the cars was guilty of such gross contributory neglect as denied him the right to recover.''

In the Clark case, *supra,* it will be noticed that the plaintiff was an adult, and that the train had not obstructed the crossing for an unreasonable length of time, while in the Jones case, *supra,* the plaintiff was an adult, and the question of how long the crossing had been obstructed was not presented, and that in both cases relief was denied on the ground of contributory negligence, of which appellant in this case can not be presumed conclusively capable.

We do not find any other authorities in this State bearing directly upon this question. In Lake Erie & Western Railway Co. v. Mackey, 20 L. R. A., 757, where a child, nine years of age, attempted to cross between the

cars of a freight train to which was attached an engine after the street had been obstructed by the train beyond the statutory period, it is held that "A child nine years of age is not guilty of neglience if he exercises that degree of care which, under like circumstances, would reasonably be expected from one of his years and intelligence. Whether he used such care in a particular case is a question for the jury." And that it is also a question for the jury in such a case "whether or not it is negligence for the company's servants to move the train without giving timely warning of their instruction to do so." In that case it is also stated that it is a question for the jury whether or not the child is a trespasser, and whether or not the mere presence of the train is to be taken as notice to such a child that the train is likely to be moved at any time.

It will be seen that in all of the cases above referred to, except the Mackey case, that the plaintiff was an adult and was charged with contributory negligence; that in the Mackey case the plaintiff was an infant, nine years of age, and not guilty of negligence if he exercised that degree of care which, under like circumstances, would reasonably be expected from one of his age and intelligence.

From which we conclude that after a railroad company occupies a public road crossing beyond the lawful period, it owes a duty to persons who are attempting to cross through, over or under its cars at said public crossing, not to injure them by starting its train without reasonable signal or notice. It will have been noticed, however, that under the authority of the Clark and Jones cases, *supra*, the right to recover for a violation of this duty is forfeited by an adult when a live engine is attached to or near the cars, and probably always, on the ground of assumed risk or his own contributory negligence which is imputed as a matter of law.

The risk cannot be assumed by, and negligence is not imputed to, a child of such tender years as to be wholly incapable of the exercise of care; the difficulty is determining at what age of the child's development it can be said that the question ceases to be one of law and becomes one of fact, but where the child is not wholly incapable of exercising some degree of care for its protection, the question is one of fact and should be submitted to the jury. This principle is too well established

to require argument or citation of authorities. The appellant having been at the time of this accident a child eight years of age, the question should have been submitted to the jury. And being of the opinion there was ample evidence to have supported a verdict for appellant under this view of the law, it results the giving of the peremptory instruction herein was error.

Wherefore the judgment herein is reversed for proceedings consistent herewith.