### Tupman's Administrator v. Schmidt, et al.

(Decided May 11, 1923.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Municipal Corporations—Whether Defendants' Truck Driver Exercised Reasonable Care Toward Six Year Old Boy Held Jury Question.—Where defendants' truck driver testified that he lifted plaintiff's six year old boy from behind the truck and placed him on the sidewalk, with a warning he was going to back the truck, and that, after spending a short time in cranking his engine, he saw the boy was not where he had placed him, but did not look to see where he was and backed the truck over him, held to make it a question for the jury whether the driver had exercised reasonable care for the safety of the boy, though it unquestionably would have shown the exercise of reasonable care for the safety of an adult.

2. Negligence—Question for Jury.—Where the question of negligence is one about which reasonable men might differ, it is a question for the jury.

3. Negligence—Care Required as to Child.—Conduct in dealing with a normal adult which may be wholly free from negligence may become negligence in dealing with an infant who has not reached the age of discretion.

4. Negligence—Infant Under Seven Years of Age Not Chargeable With Contributory Negligence.—An infant under the age of seven years cannot as a matter of law be guilty of contributory negligence, and one between seven and fourteen years may or may not be guilty of such negligence, depending on his mental development and other circumstances.

ROBERT C. SIMMONS and T. J. EDMONDS for appellant.

H. A. NIEBERDING for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

On the 10th of January, 1921, Woodrow Tupman, an infant then six years, one month and ten days old, was run over and killed by a one-ton Ford truck operated by an employe of appellees.

This is an action by the administrator of the infant seeking damages for his death because, as alleged, of the negligence of appellees, through their employe, in the operation of the truck.

On the trial below at the conclusion of all the evidence the lower court directed a verdict for the defendants, and the correctness of that ruling is the only question presented.

The essential facts are undisputed, although as to minor details there is some differences in the statements of the witnesses.

Decedent, together with a companion ten years of age, was sent from his home in Covington on an errand to Silverman's grocery on Fifth street in that city. The two boys took with them the toy wagon of the smaller one and when they reached the grocery appellees' truck was standing at or near the entrance to it parked at the curbing. The employe was engaged in delivering for his employers, who are wholesale grocers, supplies to retailers, and was at the time delivering a consignment to Silverman. When the two children reached the grocery appellees' employe was delivering the goods to Silverman and had the tailgate of his truck down for that purpose. The body of the truck extended three feet and nine inches beyond the rear axle.

The older boy took his bucket and went into the grocery to purchase the article they had come for and left the younger one out in front with his wagon. Appellees' employe had finished delivering the groceries before the older boy returned from the inside of the building, and came out and went to the rear of his truck to close the tailgate preparatory to leaving. He found the Tupman child with his little wagon just at the rear of the truck and picked him and his wagon up and placed them on the sidewalk and told the child to stay there, that he (the driver) was going to back up. There was parked just about three feet in front of the truck another machine or automobile, and this made it necessary for the driver in order to get his truck into the street to first back it.

After placing the boy and his wagon on the sidewalk the driver went to the front of the truck, and it being cold weather, he had some difficulty in getting the engine started, it being necessary for him to crank it four or five times, and in this operation he must have consumed only a short time. He then stepped to the sidewalk and looked back but did not see the child or his wagon, but did see some other boys playing a short distance away, but did not see decedent among them. He then got in his truck, threw the machinery in reverse and began to back right away, and in doing so backed the rear outside wheel over the infant, and before he was notified by persons on the street had backed far enough to cause the front outside wheel to also run over the boy. While he was backing the Ford engine was making a great deal of noise, and it is probable he did not hear for that reason the several screams and warnings that persons on the street undertook to give him, but promptly stopped when first apprised of them.

As our conclusion on this appeal rests very largely on the evidence of the driver, we will quote freely from it, as the question of law involved must be applied chiefly on the facts as stated by him.

The driver, after stating he was a married man and employed by appellees and that he had had four years' experience in operating Ford trucks, on his main examination said:

"A. I delivered the groceries in the store and handed Mrs. Silverman the bill, and came out and closed up my tailgate and a little boy was standing there with his wagon, out in the street, and I picked him up and put him on the sidewalk and told him to stay there, that I was going to back up. Q. What then? A. Then I went up in front and started the machine; it was cold and I had to crank it four or five times; after I started it I stepped to the side and looked back; everything was clear; I got in the cab, blowed the horn, looked back and started up. Q. Did you see the boy at that time? A. No, I never seen him after I put him on the sidewalk until he lay a corpse."

On cross-examination upon being asked how long he had been at the grocery before starting to leave he said:

"A. I had been there maybe ten or fifteen minutes. Something like that. Q. When did you first notice these boys; where did you first see them? A. Kids are always

playing there, and this little fellow was standing back of my machine when I went to close my tailgate. Q. Is that the first-time you noticed him? A. Yes, sir. Q. Then, when you closed up the tailgate, what did you do? A. I picked the little boy up and put him in his wagon and put him on the sidewalk. Q. Was there other children there? A. None but this little fellow in back of the machine; others were on the sidewalk playing. Q. Then what did you do? A. I went then to crank the engine; I looked down the sidewalk and everything was clear and I got up in the cab. Q. Where was the little boy then? A. I did not see him then, after I put him on the sidewalk. Q. Did you see the little wagon then? A. No. Boys were playing up above, but I didn't see him. Q. You did not see what became of this little boy? A. No, sir; there were so many there. Q. You did not see the one that had been behind there with the wagon? A. No, sir, not after I put him on the sidewalk. . . . Q. How long after you cranked the engine was it before you started to back? A. Well, right away, as soon as I got in the cab and throwed it in reverse. Q. Then how far did you back? A. I just backed far enough to make my swing out in the street to make my turn. Q. How far would that be? A. That is about six or eight feet; something like that."

Further along in the cross-examination, in referring to the notice given to him by a man on the street, he said:

"Q. You heard him without any difficulty? A. Yes, when he hollooed. Q. That was the first thing you heard? A. Yes, sir. Q. Then, how soon after that did you stop? A. Just as soon as he hollooed I stopped. Q. You had already backed about eight feet and then started to go forward when he hollooed? A. I was just going to start forward. Q. Had not you moved forward at all? A. Not that I remember."

Under this evidence if the driver had been dealing with a normal adult in full possesion of his faculties and senses, it appears to be indisputable that he was free from negligence. But he was dealing with an infant of tender years; as a normal man of reasonable intelligence he knew from the size and appearance of the infant he had not reached the age of discretion, and that one of such age is ordinarily incapable of understanding the force or effect of a warning of danger, and incapable of appreciating any danger which he might incur by disregarding

such warning. His childish instinct, and possibly his observation, taught him that ordinarily motor vehicles move forward and not backward, and not being able to appreciate from the proximity of the other motor car in front of the truck that it was necessary before going forward for the driver to back up, he probably persisted in his childish purpose, after the driver had left him, of again undertaking to hitch his wagon to the truck for a ride.

The driver being a man of mature years must be presumed to have had some knowledge of the instincts, whims and nature of small children; he must have known that a child of six years is incapable of grasping or understanding the dangers involved in a given situation. The driver admits that a very short time before he backed up he found this infant in a place of danger, and he admits that after he had placed him and his wagon in a place of safety and had occupied a very short time in cranking his machine, he again looked and did not see either the child or his wagon at the point where he had only a minute or so before placed them, and admits that he saw other children playing nearby, but did not see that child among them and did not see either him or his wagon anywhere.

If he had, as heretofore suggested, been dealing with a normal adult, he would have had a right to assume under those conditions that such person had gone on his way, and, in accord with the warning, had kept himself in a safe place. But did he as an ordinarily sensible man, and in the exercise of ordinary care, without further investigation, have the right to assume, when he was dealing with a six-year-old child, who had not reached the age of discretion, and who was incapable of appreciating the danger, the child had not again, in following the natural instincts of small children, placed himself and wagon behind the truck?

It will be observed that the driver after cranking his car says that he looked back where he had placed the child and the wagon and failed to see them, and likewise failed to see them among the other children playing nearby; but he does not say that he stepped to the back of the machine to ascertain whether this infant was out of danger, or that he even stooped down to look under the truck to see whether he might be back there.

We have therefore reached the conclusion that in dealing with this infant of tender age, under all the facts and circumstances detailed by the driver himself, the question whether or not under all the circumstances he exercised reasonable care for the safety of the child was one which should have been submitted to the jury. It is a question about which reasonable men might differ and is therefore one for the jury. This conclusion has been reached without sentiment or sympathy, for it is a well known rule, and a fully recognized doctrine, that conduct in dealing with a normal adult which may be wholly free from negligence may amount to and become such in dealing with an infant who has not reached the age of discretion.

There is no question of contributory negligence here. It is settled in this state that an infant of tender years as a matter of law cannot be guilty of contributory negligence. Newport v. Lewis, 155 Ky. 832; Allegheny Coke Co. v. Massie, 163 Ky. 792, and Trent v. N. & W. Railway Co., 167 Ky. 319. In the two former cases the infants were respectively four and five years of age, but in the latter case the infant was eight years of age and the court referred to the difficulty in determining at what age a child's development is such that the question ceases to be one of law and becomes one of fact, and held that where a child is not wholly incapable of exercising some degree of care for its own protection, the question is one of fact and should be submitted to the jury, and in that case directed the question submitted.

The general rule (20 R. C. L. 127-8), however, is that as a matter of law children under seven years of age can not be guilty of contributory negligence; but between the ages of seven and fourteen they may or not be guilty of such negligence, depending upon their mental development and other circumstances. On another trial the question of contributory negligence will be eliminated. In the case of Bransom's Administrator v. Labrot, etc., 81 Ky. 638, a question somewhat akin to the one here involved was considered. The defendants there were in possession and control of an unfenced lot on which they had stacked a large quantity of lumber in an irregular pile and in such a negligent manner as to injure an infant of tender years living nearby, while playing near it. The court, in discussing the liability of the defendants, said:

"But the rights and duties of appellees in this case are to be considered and determined in their relation to

an infant, who, though his exact age is not given, is stated in the pleadings to have had, by reason of his tender years, no knowledge of the impending danger from the timber pile, or power to prevent the destruction thereby of his life.

"It is a reasonable and necessary rule that a higher degree of care should be exercised toward a child incapable of using discretion commensurate with the perils of his situation than one of mature age and capacity; hence, conduct which towards the general public might be up to the standard of due care, may be gross or willful negligence when considered with reference to children of tender age and immature experience."

This court likewise in the case of K. C. Railway Co. v. Gastineau's Admr., 83 Ky. 119, laid down a similar rule in determining whether an infant of tender years should be treated as a trespasser. In discussing that question it said:

"One should exercise reasonable care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, although he may be technically a trespasser. His condition excuses his concurrent negligence. Humane considerations require such a rule.

"Thus one may incur liability for an injury to a child of tender years, by leaving dangerous machinery where it is accessible to him, although there would be no liability to an adult or a child of years of discretion under the like circumstances."

Applying to the facts of this case these humane rules, under the evidence in this case the question of negligence or no negligence by the driver should have been submitted to a jury so that it might pass upon the question whether under all the circumstances he had done his whole duty in the protection of the infant when he placed him in a position of safety and left him there, but shortly thereafter moved his truck when he knew the infant was not then at the place of safety in which he had placed him a very short time before.

The rule laid down in the two Kentucky cases quoted is the general rule. Penso v. McCormick, 21 A. S. R. (Ind.) 211 and note; Westbrook v. M. & O., 14 A. S. R. 587 (Miss.) and note. p. 592; Kruger v. Omaha & C. B.

St. Ry. Co. (Neb.), 17 L. R. A. (N. S.) 101 and note 102;
29 Cyc. 29-30 and note.

The judgment is reversed with directions to grant
appellant a new trial and for further proceedings con-
sistent herewith.

Whole court sitting.