## Dixon v. Stringer et al.

March 10, 1939.

DOYLE WILLIS, Judge.

348

RODES & WILLOCK for appellant.

HARLIN & COLEMAN, LEE MOORE, JOE CLARK and DAVIS, BOEHL, VISER & MARCUS for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Fred Dixon, Jr., a child nine years of age, received personal injuries by being struck by appellee's automobile. On a trial before a jury, verdict was rendered for appellees. From the judgment entered on that verdict this appeal is prosecuted, two contentions being made: (1) That the verdict is flagrantly against the evidence, and (2) that the court erred in instructing the jury.

The plaintiff was injured at the intersection of Main and Cedar Streets in Franklin, Kentucky, where these streets enter the court square. Both of these streets are 60 feet wide. There was a traffic light at the intersection. Appellee was driving her automobile south on Main Street entering the intersection or court square. Appellant came out of a store known as the "Dime Store" on the corner and was crossing Main Street between white lines marked for pedestrian traffic on his way to a sulphur well. Appellant testified that he stood at the corner waiting for the traffic light to turn green for him and then started across the street; that he saw appellees' car approaching slowly and presumed that it would stop, as the red light was against the car, but that instead of doing so the driver of the car disregarded the traffic light and ran into him. Appellee, Mrs. Mary Leslie Vaughan, driving the car, says that she approached the crossing slowly, watching the traffic light; that before she arrived at the intersection it turned green for her and she proceeded slowly across; that the first she knew of appellant's presence was when she heard him scream as the car struck him. She admits

that in entering the intersection she was not looking either way but was watching only the traffic light. As she expressed it, "I was attending to my driving."

Numerous witnesses testified that the traffic light was green for her and other witnesses testified that the light was green for the boy. The boy testified he was walking rapidly across the street but two witnesses for appellees testified that he was running. One of these witnesses said that the child ran directly in front of the car while it was running very slowly. The uncontroverted proof in the case was that the car was being operated very slowly, probably not more than 5 or 6 miles per hour.

This resumé of the testimony makes it apparent that the verdict was not flagrantly against the evidence. Appellees introduced evidence sufficient to justify the jury finding for them on the ground of appellant's contributory negligence. Conceding, arguendo, that appellees were negligent, there being substantial evidence in the case that the boy ran across the intersection directly into the path of the approaching car with the red light against him, there was ample justification for the jury to render a verdict for appellees on the ground of his contributory negligence. We are therefore of the opinion that there is no merit in this contention of appellant.

(2) Appellant's next contention is that an instruction denominated as a "sudden appearance" instruction should not have been given, but that, if given, it should have been contingent on the fact that Mrs. Vaughan had the right to proceed across the intersection and upon the fact that she was keeping a reasonable lookout for any pedestrians who might be using the intersection. The instruction given was as follows:

"If the jury believe from the evidence that the plaintiff, Fred Dixon, Jr., came into the path of the defendant's automobile so suddenly and so close thereto as to be in danger of being struck, and that the driver of the automobile could not, in the exercise of ordinary care, with the means at her command, have stopped said automobile or slowed its speed or changed its course in time to have avoided said plaintiff, then the law is for the defendants."

The manner in which the correctness of this instruc-

tion is challenged by appellant's contention makes it necessary to consider the origin and development of the so-called "sudden appearance" instruction, and to determine whether or not there is any necessity or reason for such types of instruction.

We have seen developed in the law of our State a false principle which has finally become known, and applied in the form of instruction, as "sudden appearance," this development having become so complete that it has begun to enjoy recognition as a separate and independent principle of the law of negligence. This theory seems to be unsound and violative of axiomatic and unquestioned principles of our law of negligence and has given rise to much confusion in the practice and to some basically unsound decisions in this court.

The fundamental concept of the law of negligence in this State as applicable to liability vel non for injury inflicted by the operator of a vehicle on a pedestrian is embodied in the three following axiomatic principles or phases:

(1) The operator is liable if he is guilty of negligence which is the proximate cause of injuries, unless

(2) The plaintiff is guilty of contributory negligence, in which event the operator is not liable unless

(3) After he discovered plaintiff's peril or by the exercise of ordinary care could have discovered it, he failed to use ordinary care and the means at hand to prevent the injury, in which event he is liable.

Any instruction in conflict with these fundamental principles is necessarily erroneous.

The growth of this "sudden appearance" doctrine originated in a disregard of, or departure from, the fundamental principles stated. The motivating force seems to have sprung from our rule of law that a child under seven years of age cannot be guilty of contributory negligence, and that a child between seven and fourteen is presumptively not chargeable with such negligence. See Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S. W. 199; Sutton Construction Company v. Lemaster's Adm'r, 223 Ky. 296, 3 S. W. (2d) 613.

Until recent years, in actions by children not chargeable with contributory negligence, the jury were, as a rule, instructed only under phase (1), namely,

whether or not the defendant was guilty of negligence which was the proximate cause of the collision. The courts apparently seemed to feel that this was not a full and fair presentation of the driver's side of the case where children suddenly walked or ran from the sidewalk or a place of obscurity into the path of a moving vehicle. When the driver was not guilty of any negligence which was the proximate cause of the collision and a child not chargeable in law with contributory negligence suddenly darted in front of the vehicle and was injured, this was nothing more than an accident in law. Neither party being in fault, legally speaking, the collision was necessarily an accident.

In the endeavor to present in concrete form the converse of the instruction submitting the question of the operator's negligence, the courts began to instruct juries that if a child walked or ran into the path of a vehicle so suddenly that the driver could not, by the exercise of ordinary care, stop in time to avoid the collision, the law was for the defendant; in short, the type of instruction in question in this case. The propriety of this type of instruction was dubious, although it was approved by this court in at least two cases. Lexington R. Company v. Van Laden's Adm'r, 1908, 107 S. W. 740, 32 Ky. Law Rep. 1047; Louisville R. Company v. Gaar, 1908, 112 S. W. 1130. In both of these cases the plaintiffs were children under five years of age. The dubiosity of this type of instruction will be made to appear in the light of considerations hereinafter stated.

The converse of the primary instruction in concrete form was properly presented in Hymarsh's Adm'r v. Paducah Traction Company, 150 Ky. 109, 150 S. W. 9, 10, in this manner:

"If you shall believe from the evidence in this case that plaintiff's decedent at the time and place complained of by plaintiff suddenly or unexpectedly run on defendant's track in front of its moving car and by reason of which and as the sole cause thereof, and not on account of any negligence on the part of defendant's motorman in charge of said car, as defined to you by instruction No. 1 herein, said decedent was run over and killed by said car, then the law is for the defendant and you will so find."

This type of instruction, while possibly superfluous from a technical legal viewpoint, was not in conflict with

the fundamental principles of the law of negligence and probably resulted in a fairer presentation of the driver's side of the case to the jury.

There is no such reason for giving this type of instruction in actions by adults where contributory negligence is pleaded, as this theory of the defense in such actions can be presented adequately by a properly drawn contributory negligence instruction. Obviously, if one violates the duty of exercising ordinary care for his own safety by walking or running suddenly into the path of a moving vehicle and thereby contributes to bring about a collision to such an extent that, but for such violation of duty, the collision would not have occurred, he is barred by contributory negligence.

But confusion gradually began to arise and the courts began to give this type of instruction in actions by persons chargeable with contributory negligence, and such instructions began to embody the elements of contributory negligence and last clear chance. A number of cases in which the so-called "sudden appearance" instruction was approved in actions by adults were Louisville R. Company v. DeMarsh, 203 Ky. 231, 262 S. W. 13; Coleman v. Nelson, 224 Ky. 460, 6 S. W. (2d) 454; Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S. W. (2d) 615, and many others. In Ashland Sanitary Milk Company v. Messersmith's Adm'r, 236 Ky. 91, 32 S. W. (2d) 727, it is impliedly recognized that the "sudden appearance" doctrine is applicable in actions by adults. In Nowak v. Joseph, 275 Ky. 470, 121 S. W. (2d) 939, this court, speaking through the writer of the present opinion, approved the giving of the so-called "sudden appearance" instruction in addition to the contributory negligence instruction where the plaintiff was an adult. In Coleman v. Nelson, supra, the principle was even extended to the point where this court directed the giving of such an instruction in an action where a collision between two automobiles was involved.

In some cases juries were instructed on "sudden appearance" where the injured pedestrian had been in plain sight of the driver for an appreciable length of time before the collision, but suddenly walked or ran into the path of the vehicle. Such action on the part of the pedestrian, if it is a result of failure to exercise ordinary care, is contributory negligence. It is neither logical nor reasonable to refer to such action as a "sud-

den appearance''—the appearance is not sudden for the operator has been aware of the pedestrian's presence for an appreciable length of time prior to the action on his part referred to in the instruction as constituting a "sudden appearance."

Can it with any reason be said that there may be a "sudden appearance" sufficient to exonerate the driver if he is not observing the duty of keeping a reasonable lookout! If the driver looks neither to the right nor the left, but merely looks down the road or street or at a traffic light in utter disregard of pedestrians on the side of the road or crossing the street, any appearance from the side of the road or street will, as to him, necessarily be a "sudden appearance" but such "sudden appearance" should not operate in law to exonerate him from liability.

The instruction in the case at bar is in conflict with the fundamental principles of the law of negligence and the conclusions reached herein. There was evidence that the driver was not keeping a reasonable lookout (her own evidence) and that she disregarded the red light. If such negligence was the proximate cause of the collision she could be excused only by contributory negligence on the plaintiff's part. A sudden appearance in the path of her car while she was keeping no lookout, a sudden appearance probably created by her own negligence, should not exonerate her, but by the instruction given the jury was permitted to do so if she exercised ordinary care after the sudden appearance. It is true that the duty of keeping a lookout was submitted in the primary instruction, but the "sudden appearance" instruction was a separate and independent instruction by which the jury were permitted to exonerate the driver on account of a "sudden appearance," although they may have reached the conclusion that the driver was not observing the lookout duty and that her negligence in this regard was the proximate cause of the collision. It is true that all the instructions must be considered as a whole in determining whether or not the law applicable is properly covered by them, but viewed even in regard to this principle the instruction in question is open to the objection pointed out.

A number of cases in this court enunciated the doctrine that it was erroneous to predicate the application of "sudden appearance" on the condition that the driv-

er must have been observing all the duties incumbent on him, but that it was correct to predicate its application on the condition that he must have been driving at a reasonable rate of speed (Messersmith case and others). This rule is sound only when excessive speed was the only negligence proven as the proximate cause of the collision. If a violation of some other duty by the driver were proven which might reasonably be found by the jury to be the proximate cause of the collision, by what principle of law should the driver be exonerated because he could not thereafter by exercising ordinary care prevent the collision? Such negligence on the driver's part probably created the peril and was the cause of the pedestrian "suddenly appearing" in the path of his car and yet, under the usual type of instruction, the driver was exonerated if, after such "sudden appearance" he exercised ordinary care to prevent a collision.

To illustrate this point concretely, assume that the driver is driving on the left side of a street in violation of his duty; a pedestrian intending to cross the street comes out from between cars parked on the left side and steps into the path of the moving car; he naturally expects and looks out for cars approaching from his left, but just as naturally assumes that none will come from his right, as he knows that cars approaching from his right should be on the opposite side of the street. The driver is guilty of negligence which could naturally be said to be the proximate cause of the collision, yet under the usual "sudden appearance" instruction he is exonerated by this "sudden appearance" for which he is responsible and which his own act created, if he thereafter exercises ordinary care to avoid the collision.

In the case at bar it is not unreasonable to deduce from the evidence that the driver's failure to keep a reasonable lookout created and brought about the "sudden appearance" of the plaintiff and was the cause of the collision, yet, under the instruction given, she is exonerated if she exercised ordinary care after the "sudden appearance" for which her negligence was probably responsible. These considerations seem to us to establish that the type of instruction under consideration is in conflict with the fundamental principles of the law of negligence above stated.

We have reached the conclusion that there is no necessity or reason for giving an independent instruc-

tion of the "sudden appearance" type in an action of this kind, since voluntary action on the part of a pedestrian by which he gets into the path of a moving car may be properly covered by an instruction on contributory negligence, if there be such a plea. In certain cases where a pedestrian might slip or fall or be propelled into the path of a car involuntarily, or in actions by plaintiffs who are not legally chargeable with contributory negligence, or in actions by adults when contributory negligence is not pleaded, this theory of the defense may be covered by an instruction in the nature of an instruction on unavoidable accident, conforming in principle to the instruction given in the Hymarsh case, supra.

In some cases where the plaintiff is between seven and fourteen years of age it may be necessary to submit to the jury the question whether or not the plaintiff is capable of being guilty of contributory negligence, but in the case at bar plaintiff's testimony establishes as a matter of law that he had sufficient intelligence and discretion to understand that there was danger of being struck by automobiles while crossing the street. It was not necessary, therefore, to submit this issue, and the trial court was justified in assuming as a matter of law that the plaintiff was capable in law of being guilty of contributory negligence. The trial court correctly defined ordinary care as applicable to plaintiff.

As there was evidence that the plaintiff walked or ran as much as 20 to 34 feet in full view of the driver (if she had been looking) before being struck, the contributory negligence instruction should be followed by an instruction on last clear chance. We think the following type of instruction will fairly present the law of the case from the defendant's side under the evidence as it now appears:

"The court instructs the jury that at the time in controversy it was the duty of the plaintiff, Fred Dixon, Jr., in crossing the street, to exercise ordinary care as above defined for his own safety, and if you believe from the evidence that he failed to observe this duty and by reason thereof walked or ran into the path of defendant's car, thereby contributing to bring about his injuries to such an extent that, but for such failure on his part, he would not have been injured, you should find for the defend-

ant, unless you further believe from the evidence that after the driver, Mrs. Vaughan, discovered his peril or by the exercise of ordinary care could have discovered it, she failed to use ordinary care and the means at hand to avoid striking plaintiff, in which latter event you should find for the plaintiff."

It seems to us that this instruction properly presents the defense of contributory negligence, including the "sudden appearance" feature thereof, and that it is not in conflict with fundamental principles. We are hopeful that conformity with the principles and conclusions enunciated in this opinion will serve to prevent to a considerable degree the confusion now apparent in the courts and amongst the legal profession as to how, when and in what form this defense theory should be presented in the form of an instruction.

The judgment is reversed for further proceedings consistent with this opinion.

The whole court sitting.