## Davis' Adm'x v. Gordon.

November 19, 1948.

Rehearing denied January 28, 1949.

Walter R. King, Charles W. Porter, and Wilbur O. Fields for appellant.

Robert L. Page and Albert F. Reutlinger for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

Howard Davis, Jr., a colored boy just under 5 years of age, was struck and killed by a truck owned and operated by appellee, Will O. Gordon. Josie S. Davis, mother of the boy, qualified as administratrix of his estate and brought this action to recover damages for wrongful death.

The accident occurred late in the afternoon of the 4th of December, 1946. The mother, Josie S. Davis, being employed, left her children with her mother, Josephine Sweeny, with whom they all resided, at 906 West Oak Street. On the day of the accident, while the grandmother was preparing the evening meal, Howard Davis, Jr. disappeared from the house and had crossed Oak Street to the north side and was, immediately prior to the accident, somewhere between 10th and 11th Streets.

Appellee, Will O. Gordon, driving a ½ ton truck, was proceeding West on Oak Street. As the child was attempting to cross Oak Street from the North to the South at a point in front of 1006 West Oak Street, which was about 100 feet West of 10th Street, the truck owned and operated by appellant, Will O. Gordon, struck the child, resulting in injuries from which the child died a few hours later.

At the trial the jury returned a verdict for the defendant. From that judgment this appeal is prosecuted.

Appellant urges three grounds of reversal: (1) The verdict was flagrantly against the evidence. (2) The court erred in admitting incompetent testimony. (3) the instructions given by the court were erroneous.

Under the first ground above urged, we must consider the evidence as introduced. The only testimony introduced by the plaintiff below, having to bear upon the manner in which the accident occurred, was that of Charles Otis Hicks and Officer Charles A. Booth.

Charles Otis Hicks was driving his car westward on Oak Street and was the second car in the line of traffic behind the truck of appellant, Gordon. In order to get a mind picture of the situation as it was, it is necessary to observe the outlay of the streets. Oak Street runs

East and West. 8th, 9th, 10th, and 11th Streets run North and South but do not extend North of Oak Street because of railroad yards and industrial plants on that side of the street. The Louisville Bridge and Iron Works occupies practically the whole block from 10th to 11th Street. A viaduct under the railroad tracks extends from 8th to 10th Street. On the south side between 8th and 10th Street are small residences and a few stores.

Hicks testified he first saw the truck of Gordon at about 8th Street, which was just before entering the viaduct; that in emerging from the viaduct, when he got up over the rise where he could see, he first observed Howard Davis, Jr., beyond 10th Street running diagonally toward Oak Street with his head thrown over his shoulder away from Oak Street as though he were noticing someone who was calling to him or chasing him; that the distance he saw him running was about 30 or 40 feet; and that without stopping he ran on into the street and that Gordon, who was proceeding westwardly on his right side of the street swerved his truck toward the center and struck the boy. He stated that the truck was going 25 or 30 miles per hour. However, there is a slight contradiction in his own testimony in that he stated he first saw the truck of Gordon at 8th Street and that he followed it through the viaduct to 10th Street; that the car immediately in front of him was only about 15 feet in front of him; and that Gordon's truck was about 15 feet in front of that car. He stated that he himself was only traveling 20 miles per hour. It would hardly be possible for Hicks to travel 20 miles an hour and yet keep within 30 or 40 feet of a truck that was traveling 25 or 30 miles per hour throughout that distance. Hicks further testified that there were no cars parked along the north side of Oak Street.

The other witness, Officer Booth, arrived at the scene about 5 minutes after the accident. He observed the position of the truck; blood stains on the pavement, and testified that the truck was riding the rails of the car tracks on the left hand side of Oak Street going West; and that the blood stains were in front of 1006 West Oak Street and were about the center of the car tracks on the left hand side going West.

Gordon stated that he was traveling West on Oak Street at about 18 or 20 miles per hour; that after coming out of the viaduct and just after passing 10th Street, the little boy ran out from behind a car about 4 or 5 feet ahead of him; that in attempting to miss the boy he swerved suddenly to the left but was unable to avoid hitting the boy; and that after immediate application of his brakes he traveled about 30 feet before coming to a stop.

A man by the name of Oglesby testified that he was coming out toward the street from between the houses located at 1006 and 1008 West Oak Street when he heard a thud; that he immediately ran out into the street and saw the child lying in front of the house at 1006 West Oak Street; and that there were one or two cars parked on the north side a little bit East of the child.

Appellant takes the position that a verdict returned on the above evidence is flagrantly against the evidence. Stress is placed upon the physical facts. It is argued that the point where the boy was run over was about 28 feet from the curbing; that the child ran this distance before he was struck by Gordon; and that he necessarily would have been within view of Gordon for some distance had Gordon been keeping a lookout. In other words, in terms of distances, assuming the child was running 5 miles per hour and the truck was traveling 20 miles per hour, it is argued that the truck would have been 112 feet East of the child when the child left the curb to run the 28 feet before being struck.

Appellant insists that the rule as approved in Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S. W. 2d 879; Lambert v. Miller's Adm'r., 277 Ky. 64, 125 S. W. 2d 1019, and Davis v. Bennett's Adm'r., 289 Ky. 516, 159 S. W. 2d 39, is applicable, that is, that the physical facts, notwithstanding evidence to the contrary, must stand uncontroverted and uncontrovertible. It will be observed that in the cases above wherein that rule was approved, the physical facts themselves were such that they could not reasonably be disputed and condemned as false contrary evidence. That is not the situation here. The physical facts, as to the point where the boy was struck and the position of the truck immediately after the accident, are not contrary to other testimony. Ap-

pellant injects what is called physical facts into a theoretical reasoning about the distance the boy could travel while the truck was traveling a certain distance. It will be noted that these theoretical facts are based on the testimony of Mr. Hicks, who was driving the second car in the line of traffic from appellee's truck, and who undertook to chart the point where the boy entered the street and the direction traveled. Clearly this does not fall within the rule announced and approved in the above cases. Therefore, appellant must fail in this contention.

It is also contended that the sudden appearance instruction was erroneous and highly prejudicial to plaintiff. In support of this position appellant relies on Lehman et al. v. Patterson, 298 Ky. 360, 182 S. W. 2d 897, 899, wherein we said:

"Upon testifying that she did not see the child until he stepped into the street, Mrs. Lehman was asked if she was looking on the sidewalk and she replied, 'I was looking straight ahead where I think you should look. * * * I was paying attention to traffic. I was looking straight ahead.' In Dixon v. Stringer, 277 Ky. 347, 126 S. W. 2d 448, 451, it was written that a driver of a car who merely looks down a street in utter disregard of pedestrians on the street, or crossing it, will not be exonerated from liability by the 'sudden appearance' of a pedestrian, as any appearance is sudden to such a motorist.

"* * * The propensity of young children to suddenly dart or run into the street or road from the curbing must be anticipated by motorists when such a child is seen, or by the exercise of ordinary care could have been seen, on the curbing or the edge of the sidewalk. Roselle v. Bingham, 242 Ky. 496, 46 S. W. 2d 784, 786."

It is insisted that the instant case is parallel to the above in that appellee here says that he was looking straight ahead, glancing neither to the left nor right, due to the fact that the traffic at that time of the evening was heavy. In the cases cited above the rule was based on the fact that there was no obstruction to prevent the operator of a car from seeing persons approaching the street. That is not the situation in this case.

The facts in the case of Louisville Taxicab & Transfer Co. v. Warren, by &c., 305 Ky. 861, 205 S. W. 2d 695, are more parallel to the facts in this case. The fact is the operator of a car does not ordinarily narrow his vision to a point directly in front of him, but by looking ahead a larger scope of territory is taken in. By keeping a lookout ahead does not mean that a person must necessarily turn his head from one side to the other looking from the right to the left, since ordinarily what is reasonably close to the right and left ahead of us comes within the range of vision. Based upon the rule as laid down in the case of Louisville Taxicab & Transfer Co. v. Warren, by &c., above, we believe the sudden appearance instruction to have been properly given.

We now come to the matter of the incompetent evidence. Appellee offered in evidence, over the objection of appellant, a copy of the diagram on the accident report made by the investigating officer who arrived at the scene of the accident some 5 or 10 minutes after the accident occurred. This diagram, no doubt, was based partly on what Officer Booth observed and partly from what others told him. A reading of the evidence shows that one of the most controversial questions raised was whether or not there were cars parked on the north side of Oak Street. Appellee claims there were and that the boy came suddenly from behind one of them directly in his path. Appellant insists there were no cars there. Hicks, testifying for appellant, stated that immediately after the accident he pulled to the curb and parked and that his was the first car parked there. This diagram of the officer shows 3 parked cars at the north curb. It further shows the deceased as coming from between two of them. This was exhibited to the jury. Appellant insists that it was prejudicial in that it instilled in the minds of the jury the fact that there were cars parked at the curb.

Appellant contends that this report was inadmissible since it was based on hearsay. Very likely there were some facts shown in the report which were not based upon hearsay. On the other hand, some were based on hearsay. The diagram of this officer, who arrived at the scene of the accident 5 or 10 minutes after the accident occurred, which showed 3 cars parked on the north side

of the street, and which charted the course of the boy as entering the street from between two of those parked cars, all based upon what others told him, is clearly hearsay and inadmissible. The court erred in allowing it to be admitted.

Wherefore, the judgment is reversed for proceedings consistent herewith.