**Malinda S. LAREAU, Administratrix of the Estate of Daniel Craig Lareau, Deceased, Appellant,**

v.

**Felix TRADER et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 17, 1965.

Rehearing Denied June 24, 1966.

**266**

Morton Holbrook, Ridley M. Sandidge, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellant.

John Dorsey, William Sullivan, Dorsey & Sullivan, Henderson, for appellees.

MILLIKEN, Judge.

This appeal is from a judgment entered on a verdict absolving the appellees-defendants from liability for the death of a thirteen year old boy bicyclist who was struck by the appellees' automobile which was traveling in the same direction as he was. Alleged errors in the instructions are the principal grounds urged for reversal of the judgment.

Craig Lareau, decedent, was killed while riding his bicycle on Highway 54, or Zion Road, in Henderson County, Kentucky, at approximately 9:30 a. m., on April 7, 1962, when struck by an automobile driven by Mrs. Nancy Turley Trader, a school teacher. The decedent was the son of the appellant-plaintiff, Malinda S. Lareau, his administratrix, who brought this wrongful death action against the appellees-defendants, Mr. and Mrs. Felix Trader, under authority of KRS 411.130.

Highway 54 is a paved highway that runs generally east and west, and at the time of this accident it intersected U. S. Highway 41 east of the City of Henderson, forming a "Y" intersection. This "Y" intersection was around 200 yards west of the point of collision.

On the day of the accident Craig Lareau was 13 years, 8 months old. It was a Saturday morning and he was on his way to the Echo Lanes Bowling Alley in Eastgate Shopping Center, proceeding on Highway 54 in a westerly direction, and was about one-quarter of a mile from his destination. Mrs. Trader was driving her 1959 Oldsmobile in a westerly direction on Highway 54 with her daughter Kathy in the front seat beside her, her destination being the First Christian Church in Henderson where she was taking her daughter to a church school function.

Mrs. Trader passed a slower moving vehicle that had just entered on Highway 54 from the left side of the road. She said when she first noticed Craig he was "about

two city blocks" in front of her, riding a bicycle and proceeding toward the west. He was around a foot from the edge of the pavement and in the right traffic lane. The road was straight and her vision was clear and unobstructed. Mrs. Trader said Craig was riding in a steady, careful manner straight down the road and that she was traveling at a speed of from "40 to 50" miles an hour in a zone about which there is some dispute in the record as to whether the mile per hour limit is 60 or 35. Mrs. Trader admitted she did not use her horn and that she pulled to the left with her left wheels being around the center line of the highway.

Mrs. Trader and Kathy both testified that at this point the decedent turned sharply to the left and directly into the path of her car and that Mrs. Trader had no time to stop. The boy was thrown onto the hood and then to the top of the car. Kathy testified, as did Mrs. Trader, that she started screaming the moment Craig cut over into the path of the car. It was around 300 feet from the point of impact to the point where Mrs. Trader stopped the car. The body had fallen from the roof of the car by then. Mrs. Trader and her daughter were the only surviving eyewitnesses.

The plaintiff contends that by the admission of Mrs. Trader she pulled over to where her left wheels were on or around the center marked lines of the highway which did not leave Craig enough clearance and resulted in her hitting him from the rear. The road at point of impact was 19 feet 3 inches wide and the right lane in which Mrs. Trader and Craig were traveling was 10 feet wide. The 1959 Oldsmobile of Mrs. Trader's was 6 feet 9 inches wide, and Craig's bicycle from tips of the handlebar was 21 inches. By testimony of Mrs. Trader, Craig was at least one foot from the edge of the pavement and there was testimony that he was two feet from the edge. It is obvious she gave Craig very little clearance.

In submitting the case to the jury, the trial court gave a contributory negligence instruction. It was the contention of the appellant that it was improper to give it under the circumstances because such an instruction was not justified by the testimony offered. It was the position of the appellant that the testimony did not rebut the presumption that a youngster from seven to fourteen years of age is incapable of negligence and that the giving of the contributory negligence instruction thus negated the presumption and made Craig Lareau as accountable for negligence as if he were an adult. Appellant contends that it must be shown that a youngster from seven to fourteen has above average judgment for one of that age to overcome the presumption that he was not responsible for his negligence.

■ We do not think the criterion of judgment in this sort of situation means judgment generally, but rather is confined to judgment in the particular situation in which the minor is involved. The testimony here did show that Craig was an intelligent young man and had average judgment generally for one of his age. In addition, it was shown that Craig was healthly, athletic, self-sufficient and had been riding a bicycle since he was six years old and had had the bicycle involved in the accident for over two years. His parents had instructed him about observing precautions in using the bicycle on the public highways, and he was thoroughly familiar with the highway over which he was traveling at the time of the fatal accident. We conclude that there was sufficient evidence to show that his judgment in this particular—handling a bicycle in traffic—certainly was above the judgment of minors generally in that respect.

Whether the issue of his judgment should have been submitted to a jury or decided by the trial court as a matter of law is fraught with confusion, as commented upon in Baldwin v. Hosley (1959), Ky., 328 S.W. 2d 426, where we said:

"In reviewing our many cases, we find a cloud of confusion. Several

held it to have been proper to give a contributory negligence instruction where the youth was between seven and fourteen years old without referring to the question or effect of the presumption. And we have cases holding it proper to have given such an unconditional instruction where there was uncontradicted evidence that the injured child was unusually bright or had sufficient intelligence and discretion to understand that he was in danger of being struck while crossing a street. Trent v. Norfolk & W. R. Co., 167 Ky. 319, 180 S.W. 792, 793; Dixon v. Stringer, 277 Ky. 347, 126 S.W.2d 448; Ward v. Music, Ky., 257 S.W.2d 516. However, we have said in several cases that where there may be reasonable differences of opinion, the question of fact whether or not the child in the individual case was capable of contributory negligence should be submitted to the jury."

(See, also, 7 Am.Jur.2d Automobiles; Blashfield 2d Ed., Sec. 151.3.)

■■ Where there is serious doubt of a minor's capability of being contributorily negligent, the issue should be submitted to the jury as suggested, but in the case at bar we think the court properly ruled as a matter of law that Craig had sufficient judgment to be held for any negligence he may have shown.

■ The instruction on contributory negligence given in this case was the same type that would have been given had Craig Lareau been an adult. However, Instruction No. 5, the ordinary care instruction, stipulated that ordinary care as "applied to the decedent Daniel Craig Lareau, means that degree of care usually exercised by ordinary careful and prudent boys of that age, intelligence and experience of the said decedent under circumstances like or similar to those of this case," which, we think, saved the instructions as a whole from being erroneous and misleading in this respect.

We are much more concerned about an aspect of the contributory negligence instruction which required Craig "to exercise ordinary care not to turn his bicycle from a direct course upon the highway unless and until such movement could be made with reasonable safety and not to turn his bicycle to the left if any other vehicle could be affected by such movement without giving a signal to turn left by extending his hand and arm horizontally for at least the last 100 feet traveled by his bicycle before turning." This instruction apparently was based upon KRS 189.380(1) and (2), which direct:

"(1) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and only after a clearly audible signal has been given by sounding the horn if any pedestrian shall be affected by the movement. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

"(2) A signal of the intention to turn right or left shall be given continuously for not less than the last one hundred feet traveled by the vehicle before turning."

■ It must be remembered that Craig admittedly was in his own lane of traffic, close to the shoulder of the road, had had no statutory warning of the approach of the Trader automobile when the accident happened, and that the point where he normally would have turned to go to the bowling alley was a substantial distance ahead. Although Mrs. Trader and Kathy testified that Craig "turned suddenly," the clearance she allowed him in passing was so frugal at most that he had little space for deviating from his course. If we concede arguendo that the statute was intended to cover deviations of direction in one's own lane of traffic, we must still conclude that it was not the words used to describe Craig's movements which

should govern invoking the statute, but the factual situation itself which should govern. We conclude that the imposition of this statutory duty upon Craig by the instruction in these circumstances was not justified and was so prejudicial that we must reverse the judgment.

 The appellant offered an instruction, which the court refused, to require Mrs. Trader to operate her automobile with particular awareness of the propensity of very young children to come suddenly into positions of peril and to apply the principle to bicycle riders like Craig. The principle has been applied to young children darting into the street. Lehman v. Patterson (1944), 298 Ky. 360, 182 S.W.2d 897, 899; Davis' Adm'x v. Gordon (1948), 309 Ky. 121, 216 S.W.2d 409; Johnson v. Gaines (1958), Ky., 313 S.W.2d 408. The principle has not been extended in this jurisdiction to youngsters operating vehicles on the public highways, vehicles like bicycles. We believe that extension of the principle to vehicles operated by minors on the public highways would unduly emphasize the duty of the ordinary driver in this area, and that the "ordinary care" instruction requiring Mrs. Trader to exercise "that degree of care usually exercised by an ordinarily careful and prudent person to avoid injury to a child the size and age of Daniel Craig Lareau under circumstances like or similar to those proven in this case" adequately covered this aspect of the case.

The appellant insists that she is entitled to a directed verdict and cites the fact that Mrs. Trader did not slacken her speed, did not give a warning signal, did not give enough clearance when the whole left lane was open to her, and admittedly was looking ahead rather than at Craig when the accident happened. On the other hand, it is contended by Mrs. Trader that Craig turned sharply from his course right in front of her car, a contention on her part which must be given some weight when considering whether to direct a verdict for the

appellant. As heretofore stated, we do not consider Craig's movement at the time as justifying giving the instruction on turning even if KRS 189.380(1) and (2) were intended to cover deviation of direction in one's own lane of traffic, but that does not mean that Craig's turn, if it be called that, was not negligently performed. We think there is enough of a doubt about the degree and direction of his movement to justify leaving it to a jury to determine whether he was negligent. There certainly was no justification for a last clear chance instruction as sought by the appellant, for it is obvious Mrs. Trader had no last clear chance to avoid the accident. On this record, it is the concensus of the Court that neither of the litigants is entitled to a directed verdict.

The judgment is reversed for proceedings consistent herewith.

MONTGOMERY, J., dissenting.

PALMORE, J., not sitting.