## National Surety Company v. Redmon.

(Decided January 19, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, No. 2).

1. Insurance—Burglary Insurance—Sufficiency of Evidence.—In an action on a policy of insurance, indemnifying against loss by burglary, theft or larceny, for the loss of a diamond stud alleged to have occurred by burglary, evidence considered and held insufficient to take the case to the jury.

2. Insurance—Burglary Insurance—Burden of Proof—Failure of Defendant to Introduce Witnesses.—In an action on a policy of insurance, indemnifying against loss by burglary, theft or larceny, for loss alleged to have been caused by burglary, it is incumbent on the plaintiff to make out a loss by burglary, and no presumption in favor of plaintiff arises from the failure of the defendant to introduce as witnesses certain detectives who were sent to investigate the loss.

ROBERT F. VAUGHAN and BASKIN, DUFFIN, KINKEAD, SAPINSKY & DUFFIN for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The National Surety Company issued to G. Lee Redmon a policy of burglary insurance, indemnifying him against loss by burglary, theft or larceny of watches, diamonds, jewelry, etc., while located in his premises. While the policy was in force, Redmon lost a diamond pin of the alleged value of $550.00. Alleging that the loss was due to burglary, committed some time during the night of May 16th, or the morning of May 17th, 1915, Redmon brought this suit against the company to recover on the policy. From a verdict and judgment in his favor for $500.00 the company appeals.

The evidence for plaintiff is in substance as follows: Redmon was the general manager of the White Mills and Lynndale Distilleries Company and resided with his family at 120 West Burnett Street in the city of Louisville. He owned a diamond stud, which weighed two and one-third carats. On Sunday morning, May 16th, 1915, he went to the Audubon Country Club and remained there during the entire day playing golf. When he went to the country club the stone was in his tie. When he

dressed to play golf he took the stone out of his tie and placed it in his pocket. When he dressed in the evening he screwed the stone into his tie. Thereafter he met his wife and returned home early in the evening. Being fatigued, he went to his room, which is located in the front of his residence and on the second floor, and retired early. Connecting with his bed room was a large hall, which led to the rear of the building. On one side of the hall in the rear is a toilet room and on the other side a guest room. Both of these rooms overlook a twelve-foot shed in the rear of his premises. On the eaves of this shed was swung a rope swing, about which the children were wont to play. When Redmon retired he unscrewed the stone from his tie and laid it on a tray on the dresser, which was used by his wife for sundry small articles. The next morning he arose early, did some work about the yard before breakfast, took a car about 8:30 and went directly to his office. During the morning he had occasion to visit several places on business, one of which was Wabnitz's saloon. While passing a mirror in the saloon he noticed that his stud was not in his tie. Thereupon he telephoned home and started an immediate search for the stone. The stone was never found. He then notified both the local agent of the company and the company itself of the loss. On May 18th, he filled out a form given him by the company's agent for the purpose of presenting his claim, in which he said:

"I have no knowledge of the manner in which the burglary, theft or larceny of my diamond stud was committed. Burglars might have gained entrance over a back shed to the second story some time during the night, at which time my diamond stud was stolen from the dresser in my bed room on the second floor."

In response to the question in the blank, "How was entry effected?" he said: "As stated above, I have no knowledge of how entrance was effected." Upon receipt of this statement the company sent a Pinkerton detective to Louisville to investigate the loss. The detective arrived about three weeks after the loss was reported. The detective and Redmon made an examination of the premises. They discovered marks on the screen which had been made by some blunt instrument used in prizing up the screen, also footprints on the roof. He did not count the footprints, but there was evidence of

more than one and they appeared to be going up the shed. He did not look for any footprints going down. About May 1st, Redmon had had his house painted. The roof and screens were included in the job. The paint on the molding on the window frame was prized off clear down to the wood. The wood was exposed and seemed to be fresh. The mark on the screen was made with such pressure as to go clear through the paint. While Redmon says that he is positive that he put the pin in his tie, on the morning that he discovered the loss, he admits that he would not have been so positive about it if he had not made the subsequent investigation. Redmon's stenographer and bookkeeper says that although she never noticed the absence of the stone before, she did notice on the morning of May 17th that Mr. Redmon did not have the stone in his tie. She further says that Redmon told her before he left the office that he had missed the stone, though Redmon himself says that he did not miss the stone until after he left the office. Another employe of the distilleries company merely says that he never noticed the stone on Mr. Redmon on May 17th. He further says that he could not swear positively that Redmon did not have the stone on.

The company insists that the foregoing evidence was insufficient to take the case to the jury and that the trial court erred in overruling its motion for a peremptory instruction.

While plaintiff might, under the policy, have predicated his recovery on a loss by burglary, theft or larceny, he saw fit to base his entire case on the claim of burglary alone and his evidence is directed solely to the establishment of that fact. It may be conceded that in a case of this kind it is not necessary to establish the *corpus delicti* by direct testimony, for such a rule would in effect nullify the policy. Miller v. Massauchusetts Bonding Company, 247 Pa. 182, 93 Atl. 320. We take it, however, that, in order to recover for loss by burglary, it is essential to show some facts from which the inference of such a loss reasonably and naturally follows. Even if we admit that the evidence is sufficient to show that the loss occurred during the night of May 16th, or the morning of May 17th, and while the stone was on the premises, and not after the plaintiff left home and while riding down town on the street car, or engaged in going about the city on business, the question whether the loss occurred by burglary remains a matter of pure specula-

tion. The only proof of burglary is the marks on the screen and the footprints on the roof of the shed. The only proof of the time that the marks and footprints were made is that they were made between the time the house was painted on May 1st and the time they were discovered about three weeks after the loss. Whether they were made between May 1st and the night of the loss, or on the night of the loss, or between the night of the loss and the time of their discovery, is not shown. Whether made by a burglar or someone else, or, if by a burglar, whether the burglar carried away the diamond, is a matter of mere guesswork. While it may be true that a loss followed by physical evidence of an entrance from the outside of the premises on the occasion of the loss may be sufficient to justify the inference of loss by burglary and, therefore, to take the case to the jury, we are not prepared to say that marks on a window screen and footprints on a roof, discovered three weeks after the loss, are sufficient for that purpose. The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made upon remote inferences. Where it is sought to base an inference on an alleged fact, the fact itself must be clearly established. If the existence of such a fact depends on a prior inference, no subsequent inference can legitimately be based upon it. Sutton's Admr. v. Louisville & N. R. Co., 168 Ky. 81, 181 S. W. 938; A. T. & S. F. Ry. Co. v. De Sedillo, 219 Fed. 686, 135 C. C. A. 358; Chamberlayne's Modern Law of Evidence, section 1029; United States v. Ross, 92 U. S. 281, 23 L. ed. 707. Here no reasonable connection between the established facts and the loss itself is shown. The evidence merely presents a few circumstances about which one might theorize as to the cause of the loss. Any conclusion that the loss occurred by burglary would be mere conjecture, and conjecture affords no sound basis for a verdict. But it is suggested that because the company sent detectives to investigate the loss and failed to introduce them as witnesses, this circumstance may be taken into consideration for the purpose of supplementing plaintiff's case, on the theory of the presumption that had the detectives been introduced they would have testified to facts tending to establish plaintiff's case. We find no merit in this contention. In a case like this, it is incumbent on the plaintiff to show loss by burglary. The defendant has a right

to stand on the case made out by the plaintiff, and no presumption in favor of plaintiff will arise from the failure of the defendant to introduce evidence on the question. Being of the opinion that the evidence was insufficient to take the case to the jury, it follows that the trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded **for a new** trial consistent with this opinion.

Whole court sitting.