## Davis v. Bennett's Adm'r.

Feb. 13, 1942.

C. B. Spicer for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This is a second appeal of this case and as the facts are fully stated in the first opinion reported in 279 Ky. 799, 132 S. W. (2d) 334, they will not be repeated except insofar as the evidence on the trial from which this appeal is taken differs from that introduced on the first trial. The judgment appealed from is for the same amount as was entered on the first trial, $4,000.

A reference to the former opinion will show the judgment was reversed because the verdict was flagrantly against the evidence on the question of whether or not Henry Thomas was acting as agent of the defendant, Garbe Davis, in driving the latter's taxicab on the occasion plaintiff alleges it crowded his decedent's, Noland Bennett's, car off the highway causing it to go over a cliff which resulted in Bennett's death. This same question is back for determination on this appeal.

On the first trial, the star witness for the plaintiff was a negro, Joe Morton, who testified that on the occasion of the accident he was a passenger in defendant's

taxicab which was driven by Henry Thomas and the latter told Morton he was driving for defendant. The former opinion held that portion of Morton's testimony as to what Thomas said as to being defendant's driver was incompetent. With this testimony excluded there was nothing in the record to show Thomas was the agent or employee of Davis.

The record before us does not show there was a second trial which resulted in a hung jury, but the briefs so state. A negro preacher, Milton Holmes, did not testify on the first trial as is shown by a transcript of the evidence heard therein, but on the trial from which this appeal is taken the record shows that he formerly testified in the case to the same effect as he did on this trial; therefore, he must have testified on the second trial. Holmes' testimony is to the effect that while he and Morton were standing together on the street in Harlan right after the first trial, Davis, also a negro, passed and Morton asked him why he had testified falsely as to being the owner of the car that figured in Bennett's accident, and Davis replied: "Well, I wouldn't have made it that way, but they didn't cut out with me like they ought to, and I didn't cut with them." Holmes was corroborated by Morton, but Davis denied any such conversation.

Morton produced a brand new negro witness, Joe Parker, on the third trial. Parker was a witness for the first time at the trial held on Oct. 9, 1940, yet without any difficulty he remembered that on April 7, 1937, the night of the accident, he got into the taxi after the accident just as Morton alighted therefrom at Cumberland, and that Henry Thomas drove him to Benham where he heard Thomas tell Davis, "I hit someone"; and he paid Thomas a 15c fare in the presence of Davis. Both Davis and Thomas denied this occurred. It was brought out on Parker's cross-examination that a few days before the third trial, Morton talked to him and made him remember the date, and that he was not interested in it before this conversation. Morton readily admitted talking to Parker, saying, "The case kept getting stronger. He was talking to me, and that is why he got into it." From this record it appears Morton took an unusual interest in the case. In producing Parker as a witness on the third trial, he might have had in mind that it would not be amiss to produce another negro witness to fortify his and the Rt. Rev. Milton Holmes' (a combination preach-

er and miner) testimony on the questions of the ownership of the car and the agency of the driver participating in the fatal accident.

As pointed out in the first opinion, the testimony of Davis and Thomas is clear and convincing that Thomas was not in Davis' employ, and that on the night of the accident the latter was not driving a car for the former. Davis is corroborated in his testimony that his car was in a repair garage the night of the accident by Mike Brochin, a white man, who ran the garage. Two of Davis' neighbors, W. R. Baylor and Lige Jordan, corroborated him in a way that the car was in a repair garage, since Baylor saw it being pushed towards the Brochin garage, and Jordan missed it from its accustomed place in Davis' yard during the time it was testified by Davis and Brochin it was in the latter's garage for repairs.

Appellee insists there is a clear cut jury issue as to whether Davis' car was being driven by his alleged servant, Thomas, and ran the Bennett car off the road; that the testimony of Morton, Holmes and Parker shows it was the Davis car and that it was being driven by Thomas as the agent of Davis, while the testimony of Davis, Thomas and Brochin shows it was not the Davis car which figured in the accident. It is urged that the jury is the sole judge of the facts and of the credibility of the witnesses, and that where the evidence is conflicting this court must keep its hands off. It is elementary that this is the rule. Rader v. Goe, 239 Ky. 288, 39 S. W. (2d) 486; Allender Co. v. Brownings' Adm'x, 242 Ky. 273, 46 S. W. (2d) 116. But these authorities, and practically all others dealing with this question, point out that where the verdict is flagrantly against the proof a reversal will be had.

A reading of this record leaves a bad taste in the mouth. The accident happened about "dusty" dark. Troy Wallace, a friend of the deceased, was traveling in the same direction as was the alleged car of Davis which passed him at a speed of from 45 to 55 miles per hour, ran him into the ditch at the side of the road and caused him to have two flat tires. This happened 300 feet from a curve and he saw Bennett crowded off the road into the ditch by this same car and then go across the road and over the cliff. It was rather remarkable that Wallace got the number of the offending car and recognized

Morton as a passenger therein when it passed him at such high speed and at a time of day when visibility is at its worst, not to mention the distraction of his car being forced into the ditch. But stranger still, Wallace saw Bennett's car go over the cliff within 300 feet of him, yet he spent from 30 to 45 minutes fixing two flat tires before going to the scene of the wreck, which he must have known from the circumstances resulted in loss of life. Things just do not happen that way. Then too, Aaron Creech, a civil engineer, testified that due to a curve in the road, a person approaching the scene of the accident from Harlan, as was Wallace, could not have seen Bennett's car when it first left the road and went into the ditch.

Holmes and Morton were both impeached as to veracity. And there were so many contradictions on material points in the testimony given by Morton on the third trial from that given on the first as to rob his testimony of practically all probative value and cast such a shadow over the cause of Bennett's wreck that the alleged Davis car becomes a phantom existing only in the imagination of Morton and Wallace, the two purported eye-witnesses.

On the first trial Morton testified he paid no attention to the Bennett car after it went into the ditch; on the third trial his testimony is that he looked back and saw it go over the cliff. He stated on the first trial that he went back to the scene of the accident that night within 30 or 40 minutes after it happened; on this trial he stated that he did not return to the scene of the accident until the following morning. On the first trial he did not know there had been a wreck until afterwards; while on the third trial he stated he saw it. In the first trial he made no mention of Joe Parker entering the car in Cumberland that Thomas was driving just as he (Morton) alighted therefrom, although the cornerstone of the case was whether or not Thomas was driving a taxi belonging to Davis. On the first trial he put the speed of the car in which he was riding at between 35 and 40 miles per hour; on the third trial he had its speed as high as 50 miles per hour. On the first trial there was a man "they called Shorty" who took Morton back to the scene of the accident within 30 or 40 minutes after it happened, but on the third trial Morton is certain he did not return to the scene that night.

Charles Bennett, a brother of deceased, testified on the first trial that Davis said that for $500 he would admit that it was his car driven by Thomas which caused the wreck, while on the third trial he was certain the figure demanded by Davis was $1,000. Bennett's testimony given on the first trial on this subject was read to him on the third trial and he denied making such an answer.

The rule enunciated in Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S. W. (2d) 879, 888, and approved in Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S. W. (2d) 1019, is quite applicable to this case:

"When physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith. The fact established by the situation itself and matters of common knowledge, so clearly that no one can reasonably dispute it, notwithstanding evidence to the contrary, must stand uncontroverted and uncontrovertible, condemning as false such contrary evidence, either upon the ground of mistake or something worse."

We have no hesitancy in saying the verdict is flagrantly against the evidence. Since the first opinion was written, the case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, has been decided in which it was said that where a verdict must be set aside as being palpably or flagrantly against the evidence, the court should not submit the case to the jury, but should direct a verdict for the defendant. Should there be another trial and should the evidence be substantially the same as shown in this record, the court will direct a verdict for the defendant at the conclusion of all the evidence.

The judgment is reversed with directions to grant defendant a new trial, and for proceedings consistent herewith.