## Le Sage v. Pitts.

June 7, 1949.

Rehearing denied November 1, 1949.

156

J. W. Jones and Jones & Jones for appellant.

Robert F. Vaughan and W. S. Heidenberg for appellee.

VAN SANT, COMMISSIONER—Affirming.

The action was instituted by appellant, Larry Le-Sage against appellee, H. V. Pitts, to recover damages sustained in falling twenty-five feet to the ground while engaged in work on the top of a wall of a warehouse being constructed for Southern States Co-Operative in Shelbyville. It was stipulated that at the time appellant was injured H. J. Steilberg and Son were general contractors for the erection of the warehouse; appellee had

a sub-contract, under the general contractor, to erect the walls; E. D. Cross and Sons had a sub-contract, under the general contractor, to erect the steel structure; and appellant was the Superintendent of E. D. Cross & Sons in charge of erecting the steel in the building.

The walls were constructed of concrete blocks 16″ long, 8″ wide, and 8″ high. The plans or directions of the general contractor required appellee to leave openings in the walls in which to place structural steel trusses. The walls were constructed first and work thereon was suspended on the 13th day of June, 1946. At that time all of the wall structure had been erected except the closing of gaps which invariably appear between the wall and the steel structure after the steel has been bolted into position. On July 2nd, the steel workers entered on the premises and on the following day had completed their work with the exception of erecting one truss, which was being placed into position for permanent anchoring, when appellant, in charge of the work, having climbed a ladder to the top of the wall, was standing on one of the blocks immediately adjoining the opening left for the truss. The block slipped from its position and "rolled" with him, throwing him off balance, and causing him to fall to the ground on the outside of the building. Mortar adhered to the block in question, indicating that it had been laid firmly in position when the wall first was erected.

The action was based on the allegation that prior to the date of the accident the defendant (appellee) negligently left a concrete block in the wall of the building in a dangerous and unsafe condition and the block was situated in a place and in a position where the defendant knew, or by the exercise of ordinary care could have known, that plaintiff would be working while installing a steel unit in the building, and that the plaintiff, while engaged in installing the steel unit, stepped on the concrete block in its unsafe and dangerous condition, and, because of such dangerous and unsafe condition, was caused to fall from the top of the wall to the ground beneath, resulting in the injuries complained of, all of which injuries and damages in the alleged amount of $40,000 were the direct and proximate result of the negligence of the defendant as related above.

At the completion of the evidence introduced on behalf of appellant the Trial Judge sustained appellee's motion for a peremptory instruction and directed the jury to find a verdict for appellee. Judgment was entered in accordance with the verdict. The Trial Judge wrote a short opinion setting forth his reasons for directing a verdict in favor of defendant, the gist of which is that the plaintiff failed to prove that any overt act or omission on the part of defendant caused the accident or caused the block which "rolled" with plaintiff to be loosened; that to conclude otherwise would require an inference to be drawn upon an inference, and would permit the jury to speculate in respect to the responsible cause of the accident. In support of this conclusion he cited Cross v. Clark, 304 Ky. 676, 201 S. W. 2d 884. Thus the sole question for our determination is whether the evidence introduced by appellant was sufficient to submit the case to the jury and to sustain its verdict if favorable to appellant.

In appellant's brief, counsel has analyzed in concise and succinct language the evidence he relies on to support his theory of the case and has pointed out the inference he has drawn from such evidence. We will copy this analysis in its entirety and of our own accord will italicize the inferences that we may point out what we conceive to be fallacies contained in appellant's argument and the soundness of the conclusion of the Trial Judge. Where we do not agree with counsel for appellant that the evidence supports the facts set forth in his analysis, we will make our own comments and enclose them in parentheses.

"(1) When appellant fell, the wall in question was in process of construction by appellee." (We think this statement is not completely accurate, although we realize that it is made in good faith. Appellee had not fulfilled all of the duties required of him under his contract with the general contractor, but actually had completed the erection of the walls of the building. He was still under contract to return after the steel work was completed, in order to fill any gaps between the wall structure and the steel. Therefore, in so far as the placing of the concrete blocks was concerned, appellee's obligation under his contract had been completed and his men had not

been on the premises for a period of approximately three weeks.)

"(2) Appellee knew that steel trusses were to be erected on the walls to support the roof.

"(3) It was appellee's duty to prepare for the erection of the trusses by leaving suitable openings in the walls where the trusses were to be placed.

"(4) If appellee's employees, in constructing the walls, forgot to leave the openings for the trusses it would have been their duty to knock out the openings in the walls. (This statement is true but there was no evidence to support the theory that appellee's employees forgot to leave the openings and there was no evidence to support the consequent theory that, after erecting the walls in solid formation, appellee's servants knocked out openings which they should have left in the original erection of the walls.)

"(5) It was the duty of appellee to fill in the openings after the trusses were set up. The openings were actually filled in by appellee about July 13, 1946. (The filling in referred to in the above statement was merely the spotting up of gaps left by failure of the steel structure to fit the exact form of the openings. This filling in was done on July 13, 1946.)

"(6) In setting steel trusses as was done in this case it was customary and necessary for the steel men to stand on top of the walls.

"(7) In doing his job it was necessary for the appellant to stand on the concrete block which rolled and fell with him.

"(8) *Appellee knew, or should have known, that a steel man would stand on that particular block in placing the truss in the opening adjacent to that block.*

"(9) The block which caused appellant to fall appeared to him to be in a permanent position.

"(10) When appellant stepped on the block in question it 'rolled out from under' him, which proves it was a loose block."

Appellant summarizes the evidence he relies on as inferential proof that appellee caused the block to be

loosened and negligently permitted it to remain loose and dangerous in the following language:

"(a) When appellant and his son arrived on the job, they found many loose concrete blocks on top of the two side walls close to the openings for the trusses.

"(b) Mr. Smith, an employee of the general contractor, testified that he had observed loose concrete blocks on top of the walls, and that he had 'seen them laying up there ever since the block layers had quit.'

"(c) It is reasonable to infer that 'if' *those loose blocks had not been knocked out of the walls they would not have been on top of the walls; that they were knocked out of the walls by appellee's men and were left on top of the walls for convenience in filling the openings after the truss had been placed.*

"(d) It is reasonable to infer *that in knocking out the blocks to make the openings where appellant was working when he fell, appellee's men jarred and loosened the block which rolled with appellant and that they negligently left it in that very unsafe condition.*"

Relying on the evidence summarized above and the inferences contended for, appellant makes two points in his argument in support of the contention that the judgment should be reversed: (1) The evidence and inferences reasonably to be drawn therefrom are direct and affirmative showings of negligence sufficient to submit the issue to the jury without the requirement of relying on any legal or factual presumption; and (2) since it was shown, by stipulation, that the instrumentality (the concrete block) was under the control of appellee and his servants, and the accident was such as in the ordinary course of events does not happen if those who have the control use proper care, appellant met the burden of proving negligence under the doctrine of res ipsa loquitur. We will discuss the contentions in reverse order.

The literal translation of the latin phrase "res ipsa loquitur" is: the thing speaks for itself. It is a legal expression or doctrine which has been applied to a certain class of occurrences, the mere happening of a which one is so probative on the issue of negligence that its proof alone presents a prima facie case, which, unless

controverted or explained away, justifies the jury in inferring negligence on the part of the defendant. Ballentine Dictionary, 1930 Edition, page 1129. An exhaustive and carefully prepared treatise of the doctrine appears in Mark Shain's "Res Ipsa Loquitur, Presumptions and Burden of Proof." The doctrine does not abrogate the rule that negligence will not be presumed by the mere occurrence of an accident or injury, Cox's Adm'r v. Cincinnati N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S. W. 2d 859; it applies where, but only where, an injury results from an instrument or appliance exclusively within the control and supervision of the defendant, and such injury would not, in the ordinary course of events, have resulted if proper care had been exercised by the defendant. Ligon's Adm'r v. Evansville Rys. Company, 165 Ky. 202, 176 S. W. 968. An essential constituent of the composite picture of an occurrence rendering the doctrine applicable is that the instrumentality causing the injury must be one which is under the *exclusive* control of the defendant. We now will consider the facts attendant upon the happening of the accident in an endeavor to determine whether they call for the application of the doctrine.

The instrumentality causing the injury was the loose concrete block on the top of the wall erected by the defendant, and on which appellant was standing when the accident occurred. Appellee did not have the responsibility of the entire contract for erecting the warehouse. His responsibility was limited to the erection of the walls; and whether in doing so he was engaged as an independent contractor or as a servant of the general contractor is immaterial under the facts of the case. Either as an independent contractor or as a servant, as the case may have been, he quit the premises on June 13, 1946, after completing the principal function of the work required of him by the general contractor. The remaining portion of the work called for by the contractor was separate and distinct from the erection of the walls, and the doing of which necessarily was deferred until after the steel structure had been erected; and, although improbable, it is possible and conceivable that the steel would have fit into the openings in such manner as not to have required any further work on the part of appellee. At any rate, the record does not disclose any obli-

gation on the part of appellee to remain on the premises from the time he completed the erection of the walls to the time—a month hence—he was required to return to the premises for the purpose of filling the gaps between the steel trusses and the openings in the walls. During this period of time either the owner of the premises, or, depending on the terms of his contract, the general contractor had custody and control of the walls erected by appellee. But appellant contends that a stipulation filed in the record concludes this question by showing that the concrete block was under the control of appellee and his servants at the time of the happening of the accident. We do not agree with this conclusion. The stipulation recites:

"It is stipulated by and between the parties by Counsel that at the time of the accident * * * the defendant, H. V. Pitts, had a sub-contract under the same general contractor, which covered the building of the walls of the structure."

This stipulation does not show that the walls were, or the concrete block which rolled with appellant was, under the *exclusive control* of appellee at the time of the accident; it does not even show that the walls had been erected at the time of the accident, or, if erected, that appellee's entire contract had not been completed at that time. Thus it is apparent that the circumstances proven in the case will not admit of the application of the doctrine of res ipsa loquitur, because the instrumentality causing the accident was not under the *exclusive* control of appellee at the time of the happening of the accident, and, unless the evidence shows affirmatively that appellee was negligent in erecting the walls of the warehouse or in placing a loose concrete block thereon, the Chancellor correctly sustained appellee's motion for a peremptory instruction.

There is no direct evidence that appellee left the block unfixed at the place the accident occurred. As we have seen in discussing the doctrine of res ipsa loquitur, the fact that a loose block was at the place shown in the evidence and that it caused the injury is not sufficient in itself to impute negligence to appellee. On the contrary it was shown by the evidence that dried mortar adhered to the surface of the block, which fact would indicate

that the block originally had been placed in a fixed position by appellee. As a matter of fact, this is the first inference appellant invokes in support of his theory of the case. His theory is that it was the duty of appellee under the direction of the general contractor to leave openings in the walls for the placement of the steel structure. We think the evidence to be conclusive on this point. Appellant, from the fact that mortar was attached to the block which rolled with him, infers that the block was anchored safely in its place in the original erection of the wall. He then theorizes, without even a scintilla of evidence to support the theory, that, in constructing the wall, appellee forgot, or at least failed, to leave openings in which to place the steel structure. This theory calls for an inference to be drawn upon the first inference. He further theorizes that, having forgotten to leave the openings in the first instance, appellee cut the openings after having erected the wall in solid formation. This is an inference drawn upon the second inference. Finally, he theorizes that, in cutting the openings in the solid wall, the block causing the injury was loosened and left in an unsafe condition in its original position. This is an inference based upon the third inference. The law requires a clear connection to be shown between evidentiary facts and conclusions and does not permit conclusions to be drawn from remote inferences. National Surety Company v. Redmon, 173 Ky. 294, 190 S. W. 1081. An inference may be drawn from a clearly established fact, but, if the conclusion is drawn upon a fact dependent for proof of its existence upon a prior inference, the evidentiary fact is too remote to support the conclusion. Where, as here, the ultimate inference is based upon an inference which in turn is based upon a prior inference, depending upon an even more remote inference, the conclusion does not rise above the dignity of mere speculation, because a pyramiding of inferences never has been regarded as sound reasoning and always has been held not to be a permissible predicate for a conclusion. Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. 2d 731 and cases therein cited.

We therefore hold that the evidence in this case was not sufficient to submit the issue of appellee's neg-

ligence to the jury, and the Court correctly instructed the jury to find a verdict in his favor.

The judgment is affirmed.