**ASHLAND OIL & REFINING CO. v. BRASHEAR et al.**

Court of Appeals of Kentucky.

May 23, 1952.

Rehearing Denied Oct. 17, 1952.

R. P. Hobson, Woodward, Hobson & Fulton, Louisville, J. W. Hodges, Elizabethtown, for appellant.

Charles W. Dobbins and Tilford, Wetherby, Dobbins & Boone, all of Louisville, J. E. Wise, Elizabethtown, for appellees.

CULLEN, Commissioner.

This is an appeal from a judgment of the Hardin Circuit Court awarding Esther Minnie Brashear, et al., appellees herein, the sum of $20,000 for damages resulting from an automobile accident. The only issue to be decided is whether the uncontroverted physical facts together with the testimony of disinterested eyewitnesses are sufficient to establish that the verdict was flagrantly against the evidence.

On the morning of December 27, 1949, Johnnie Calhoun and his fiancee, Esther Minnie Brashear, her two sons, Allen and Robert Brashear (11 and 13 years old respectively) and Richard Calhoun, a brother of Johnnie, were traveling in a car from Hodgenville towards Elizabethtown, on Highway 61. Johnnie Calhoun was driving and Esther and Richard were on the front seat with him. The two boys were on the rear seat. Highway 61, running west from Hodgenville, makes a T intersection with Highway 31W a few miles south of Elizabethtown. Highway 31W is a regular two lane highway, but for some distance both north and south of the intersection there is a third lane. Vehicles on Highway 61 are required to stop before entering upon Highway 31W, which is a main artery of traffic.

After the appellees' car had entered upon Highway 31W at the intersection, there was a collision with appellant's gasoline

truck, which was traveling south on Highway 31W. Johnnie Calhoun, the driver of the car, was killed and the others in the car injured. The cases were tried together resulting in a verdict for $4,000 in favor of Johnnie Calhoun's administrator, and verdicts for $3,000, $1,000, $6,000 and $6,000 in favor of Esther Brashear, Richard Calhoun, Allen Brashear, and Robert Brashear, respectively.

The appellant contends that the verdicts were flagrantly against the evidence and, therefore, its motion for a directed verdict at the conclusion of all the testimony should have been sustained.

The strongest evidence for the appellees consisted of the testimony of Esther Brashear and her son Robert. They both testified that their automobile stopped in obedience to the arterial stop sign before entering the intersection, then turned north in the east lane of Highway 31W; that they observed the gasoline truck coming towards them in the east lane and it appeared to them that the truck driver was intending to turn into Highway 61; and that the collision occurred in the east lane around 30 or 40 feet north of the intersection. Richard Calhoun and the other Brashear boy testified that their car stopped before entering the intersection, and then turned north, but neither of them saw the truck before the collision. Richard was not sure as to which traffic lane the car was in at the time of the collision. No other eyewitness to the collision testified for the appellees.

Jewell Elmore, driver of appellant's truck, testified he was going to Edmonton and had no intention of turning into the Hodgenville road; that the speed of the truck was 15 to 20 miles per hour; that the appellees' car did not stop before entering the intersection; and that when the collision occurred the truck was partly in the west lane and partly off on the shoulder. J. T. Almond, a disinterested witness, who was driving 100 or 125 feet behind the gasoline truck, testified that the truck was in its righthand lane; that the car came into the intersection at a good rate of speed and without stopping, and struck the truck which was pulling to the right to avoid contact. Henry Everett, another disinterested witness, testified that he saw the truck and car shortly before they reached the intersection; the truck was in its proper lane; the car failed to stop at the intersection; and the collision occurred on the west side of Highway 31W.

On the testimony of the above witnesses alone, the appellant, though apparently supported by a preponderance of the evidence, would not have been entitled to a directed verdict, for there was a sufficient conflict presented by the evidence to warrant a submission of the case to the jury. However, when the testimony of appellant's witnesses is taken in connection with the uncontroverted physical facts, as described by Capt. John Watts and Sergeant Leo Adkinson, officers of the State Highway Patrol, the conclusion is inescapable that the verdict is flagrantly against the evidence, and therefore, under the rule in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877, a directed verdict should have been given for the appellant.

The uncontroverted physical facts are: (1) After the collision, the vehicles came to a stop about 20 or 25 feet south of the intersection, with the truck completely off the road on the west side, and the automobile on the pavement in the west lane some 10 or 15 feet north of the truck, both vehicles facing to the south; (2) all of the debris from the impact (except for some glass scattered in the middle lane) was lying in the west lane within the boundaries of the intersection; (3) the body of the driver of the automobile was lying in the west lane behind the automobile, and one of the injured boys was lying between the truck and the automobile.

While it is conceivable that if the truck had been traveling at a high rate of speed, in the east lane, it might have angled across the road, dragging the car with it, to the ultimate stopping point of the vehicles south of the intersection on the west side, it must be remembered that there is no testimony putting the speed of the truck at more than 25 miles per hour. If the testimony of the appellees is to be believed, that the truck driver apparently was intending to turn left into Highway 61, the truck obviously could not have been going very fast, be-

cause otherwise the turn to the left could not have been negotiated. According to the testimony of the appellees, their automobile also was going quite slow, having just gotten under way after stopping for the intersection. It is not believable that if the collision between these two slowly moving vehicles had occurred in the east lane, 40 feet north of the intersection, the vehicles would both end up some 100 feet to the south, on the other side of the three-lane road. Furthermore, there is no evidence of marks on the highway to indicate that the automobile was dragged diagonally across the highway, which necessarily would have occurred had the accident happened the way the appellees claim.

The position of the body of Johnnie Calhoun also lends support to appellant's version of the accident. The most reasonable assumption is that when the vehicles collided, the automobile was spun around so that the right side again struck the truck, and that Johnnie was thrown from the car by this impact. This logically would place his body where it was found, a little to the north and east of the automobile.

Even if the position of the vehicles after the accident, and the position of the body of Johnnie Calhoun, can be explained away as some of the freakish effects sometimes caused by the violent impacts of moving bodies, no explanation has been offered by the appellees for the presence of the debris in the west lane, and the absence of any debris in the east lane. Captain Watts testified that from the position of the debris "you could tell where the impact occurred." If this impact, which was so violent as to cause the death of the driver of the automobile, had occurred in the east lane some 40 feet north of the intersection, almost necessarily some glass or other debris would have been found near that point.

The physical facts agree so completely with the testimony of the disinterested witnesses as to establish conclusively that the accident did not happen as claimed by the appellees. We therefore reach the conclusion that the verdict was flagrantly against the evidence. See C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S. W.2d 335; Silver Fleet Motor Express v.

Wilson, 291 Ky. 509, 165 S.W.2d 48; Davis v. Bennett's Adm'r, 289 Ky. 516, 159 S.W. 2d 39.

The judgment is reversed, with directions that if on another trial the evidence is the same, the court shall direct a verdict for the defendant.