CENTRAL LUMBER COMPANY et al., Appellants,

v.

Elsie T. SPARKS' ADM'R (G. R. Sparks), Appellee.

CENTRAL LUMBER COMPANY, Appellant,

v.

G. R. SPARKS, Appellee.

Court of Appeals of Kentucky.

March 23, 1956.

As Modified on Denial of Rehearing

Dec. 7, 1956.

---

Carroll M. Redford and Richardson & Barrickman, Glasgow, for appellants.

Charles R. Huddleston, Edmonton, Cecil C. Wilson, Glasgow, Paul Huddleston, Bowling Green, for appellees.

CULLEN, Commissioner.

Mrs. Elsie T. Sparks was killed in a collision between her husband's automobile, being driven by her, and a truck of the Central Lumber Company, being driven by Russell Davis. In an action for wrongful death, against the lumber company and Davis, Mrs. Sparks' administrator recovered judgment, upon a jury verdict, in the amount of $35,663.50. In a companion action by her husband for damages to his automobile, brought against the lumber company alone, he recovered judgment for $1,000 upon the same verdict. The lumber company and Davis have appealed from the judgment in favor of the administrator, and the lumber company has moved for an appeal from the judgment in favor of the husband.

The primary contention is that a verdict should have been directed for the defendants upon both claims. The discussion of this contention requires a summary of the evidence.

The collision was a sideswiping one, between the Sparks car, headed east, and the defendants' truck, headed west, on a 16-foot blacktop pavement. An automobile occupied by a Mr. and Mrs. Jeanette, traveling east somewhere between 15 and 50 feet ahead of the Sparks car, passed the truck with no difficulty a moment before the collision.

Mrs. Sparks was alone in her car, so there was no occupant of her car available to give testimony about the collision. There were two men in the cab of the truck besides the driver. These two men, and the driver, testified that the truck at all times remained on its side of the road. A pedestrian on the highway near the point of collision also testified that the truck remained on its side, and that the car came across the road and hit the truck. Mr. and Mrs. Jeanette said that when they passed the truck they had "plenty of room" and the truck was well on its own side of the road. On the basis of the speeds of the truck and the Sparks car, which these witnesses all agree were around 25 to 30 miles per hour, the collision happened a fraction of a second after the Jeanette car passed the truck. There was some evidence as to skid marks and debris, but it was of no value in determining the point of collision.

There was an effort to prove that the load of logs on the truck extended over the side to such an extent that the logs would have been partly in the lane of travel of the Sparks car even though the wheels of the truck remained in the proper lane. One of the men in the cab of the truck testified that *after the collision* the logs extended some eight inches over the side of the truck, and that the logs "had not shifted." This evidence was of little value, in view of the testimony of the same witness, and a number of other witnesses, that one of the boom chains holding the logs in place was broken in the collision; the plain physical fact that the swerving of the truck in the collision, with the breaking of the boom chain, almost necessarily would cause the logs to shift; and the testimony of the Jeanettes that the logs were not protruding when they passed the truck a frac-

tion of a second before the collision. However, regardless of all this, the physical evidence shows clearly that the Sparks car collided with the bed of the truck, so the protruding of the logs, if they did protrude, was not a factor in causing the collision.

The appellees place much reliance on the testimony of Robert Dickson, an employe of another lumber company who was standing on the premises of his employer some 120 feet from the highway. However, he did not state that the truck was on the wrong side of the road, but said only that the truck "seemed to be out of control," the Sparks car "seemed to be staying on the proper side of the road," and at the time of the accident the Sparks car was not "undertaking to pass any vehicle or pulling cross the center line for any reason at all." At a later point in his testimony, Dickson said he couldn't say for certain whether there was a white or yellow line marking the center of the road.

Taking Dickson's testimony at its face value, we find that in substance it amounts to no more than an expression of opinion based upon a fleeting glimpse of the vehicles before the collision. His impression that the Sparks car was staying on its side of the road was based on a view of the narrow 16-foot roadway from a point some 120 feet away, and without reference to a marked center line. His opinion that the truck was "out of control" developed, upon full examination, to be based on his impression that the truck was "bouncing". When questioned as to whether the truck swerved immediately before the collision, his answer was "No."

While in some cases we have not attached much significance to the use by a witness of such expressions as "seemed," "appeared," or "I reckon", see Combs v. Wooten, Ky., 239 S.W.2d 981, an analysis of Dickson's testimony as a whole shows clearly that he deliberately and intentionally used the word "seemed" because that word indicated the extent of the knowledge he had of the situation of the vehicles immediately before the collision. He carefully refrained from making any positive statements of fact because he realized that his distant view of the scene had given him nothing more than an impression.

In order to sustain a finding of negligence on the part of the truck driver, one would have to infer, from Dickson's statement that the Sparks car seemed to be staying on its proper side of the road, that the truck was on the wrong side. We can find no justification for drawing such an inference from testimony so uncertain as was Dickson's. In Le Sage v. Pitts, 311 Ky. 155, 223 S.W.2d 347, 352, it was said that an inference may be drawn from a "clearly established fact." Under no stretch of the imagination can it be said that the position of the Sparks car on its own side of the road was clearly established.

We think some significance must be given to the fact that all of the *plaintiffs'* witnesses, except Dickson, said the truck was on its proper side of the road.

It is our opinion that the evidence for the plaintiffs, including that of Dickson, did not have the fitness to induce, in reasonable minds, conviction of the existence of the fact which the plaintiffs were required to establish, namely, that the truck was on the wrong side of the road. Accordingly, the court should have directed a verdict for the defendants.

The motion for an appeal from the judgment in favor of Mr. Sparks is sustained and both judgments are reversed, with directions to sustain the defendants' motions for judgment notwithstanding the verdict.

MONTGOMERY, J., dissents, being of the opinion that the plaintiffs' evidence was sufficient to require submission of the case to the jury.