**Freeda STEELY, as Administrator of the estate of Joseph Steely, Deceased, Appellant,**

v.

**Bill (W. N.) HANCOCK, Appellee.**

Court of Appeals of Kentucky.

Nov. 23, 1960.

Earl Huddleston, Columbia, for appellant.

Hurt & Hutchison, Columbia, for appellee.

PALMORE, Judge.

This is a wrongful death action arising out of an automobile-truck sideswipe collision in which plaintiff's decedent, driver of the automobile, was fatally injured. At the close of plaintiff's evidence a verdict was directed in defendant's favor on the complaint and trial of a counterclaim was deferred until a later date. An order having been entered satisfying the requirement of CR 54.02, plaintiff appeals.

We have only one question. Was the evidence offered by plaintiff enough to authorize a finding of negligence on the part of defendant?

The accident occurred September 17, 1956, during the daytime, on Kentucky Highway 206 about 3 miles east of Columbia in Adair County. The record (as distinguished from appellant's brief) does not show whether the road at this point was straight or curved, nor was there any evidence as to its width. Apparently, however, it was a blacktop highway wide enough for two vehicles to meet and pass. Steely, plaintiff's decedent, was driving east in a 1947 or 1948 model 4-door Chevrolet automobile. Hancock, the defendant, was driving west toward Columbia in a 1½ ton panel truck. Both men were alone. If Hancock's deposition was taken, it was not introduced. Steely did not live to testify. There were no other eye-witnesses to the accident at and just prior to the moment of the impact. However, two neighbors at their homes on the south side of the road heard the collision, looked and saw the two vehicles while they were still moving and until they stopped, both on the south side of the highway.

The Steely automobile came to rest with its rear wheels off in the ditch to the south, or its right side, of the road with the front wheels on the blacktop. The truck came to rest with its front wheels in the same ditch and its rear wheels in the road. Thus it may be seen that the two vehicles were revolved counterclockwise and thrown southward by the force of the sidewiping impact.

The witness Jim Barnard was in the rear part of his yard using a saw when his attention was attracted:

"I heard the racket and tire screaming and I looked up and they had met. Steely's car looked like the front wheels were up in the air two or three feet and the truck was carrying it around."

"On what side of the road?"

"On this side with the rear wheels in the ditch."

"What was the truck doing?"

"Carrying it on around. It come to a standstill and turned this way down the road."

On cross-examination:

"You say the first thing you saw was the front wheels of Steely's car up in the air?"

"They was all together, looked to be in the air quite a bit."

"Rear wheels slidding [sic] in the ditch?"

"They was done in the ditch."

"You didn't see the accident happen, did you?"

"I guess I seen the most of it."

And the witness Mrs. Otis Curry:

"Where did the collision take place with reference to your home?"

"In front of the house."

"Where were you at the time of the the collision?"

"Sitting by the window."

*   *   *   *   *   *

"Tell what you heard and saw there."

"I heard the racket and looked. When I looked the car was coming around and the truck headed toward the ditch."

"What side of the road was the car on?"

"Mr. Steely's side."

"How was the truck coming?"

"On the right hand side, on Steely's side."

"Were the vehicles together at that time?"

"They were pretty close together. I couldn't say. They was both coming around."

On cross-examination:

"You don't know which side of the road either one was on?"

"No."

There was other evidence, principally in the form of marks on the highway and photographs of the two vehicles, from which various deductions can be made. For example, it is reasonably clear from the photographs that the main point of contact on the automobile was the left side in the area of the doors and left front corner-post of the windshield. The bumper and left headlight of the automobile were undamaged. The left front fender of the truck was smashed and its wheel locked sharply to the left. The left front vertical standard of the truck bed was broken off at window level, and its mark is clearly visible in the form of a deep diagonal crease in the top of the car at and above the left side of the windshield, running upward from the corner post, which was caved in. But none of this is helpful in determining the vital question of where the respective vehicles were with respect to the center of the highway at the moment of collision.

Both parties rely considerably on certain testimony as to tire marks. According to the testimony of a deputy sheriff who in-vestigated the accident shortly after its occurrence, the left front wheel of the truck left a skid mark 14 to 18 inches from the center of the road on its own (north) side, and its right rear dual wheel left a mark on the gravel shoulder off the north edge of the pavement. The automobile left tire marks from a point 12 to 14 inches on its right (south) side of the center of the road to the point where it stopped after the accident. There was, therefore, an unmarked space (of undetermined size) in the center of the road between the surface marks left by the respective vehicles.

It was proved that the forward overhang of the truck from the front axle to the bumper was 3½ to 4 feet, and the appellant argues that if its right rear wheel was on the shoulder and its left front wheel within 18 inches of the middle of the road the front end of the truck was bound to protrude into the automobile's traffic lane. Had more details been proved, this might be a valid deduction. But here are some of the missing details: the length of the truck; the width of the pavement; the length of the tire marks left by the truck; and, most important of all to this theory, the direction of these marks, as to whether they were parallel or at an appreciable angle with the imaginary center line of the road. And what might have been of even greater significance, the outward or horizontal overhang from the line of the left front wheel to the outer edge of the truck bed, also was not shown. Therefore, we cannot say that the marks locate the truck at the time of the accident; neither, since the vehicles were lifted into the air by the impact, do the tire marks thereafter made by the automobile establish its location at the instant of collision.

■ In order to support a finding of negligence on the part of the truck driver in this case it must be reasonably inferable from the evidence that at the time of the accident the automobile was on its proper side of the road and the truck at least partially on the wrong side. Central Lumber

Co. v. Sparks' Adm'r, Ky.1956, 296 S.W. 2d 453. Neither of the witnesses Barnard and Mrs. Curry was in a position to state where the two vehicles were with respect to the center of the highway at the moment of impact. In substance their testimony proves only that the car and truck collided, on the highway and thence came to rest partially in the ditch to the south of the pavement. In the final analysis, then, we come to the question of whether the post-accident positions of the vehicles alone will raise the inference necessary to make the case.

█ "Circumstantial evidence may be sufficient to prove a civil claim. However, such evidence must do more than suggest a possibility, and a recovery is not authorized if liability is a matter of conjecture, surmise or speculation * * *. If a jury is required to speculate, the party must lose upon whom the burden of proof ultimately rests." Bryan v. Gilpin, Ky.1955, 282 S.W. 2d 133, 134.

In Sims Motor Transportation Lines v. Foster, Ky.1956, 293 S.W.2d 226, a driver's testimony that he was completely in his proper lane of traffic "immediately" before the accident was held to be sufficient evidence that a truck striking him head-on had obtruded upon its wrong side of the highway. "Immediately," however, means that the time between two events was nil, which in practical effect is to say that there was no interval, however infinitesimal, between the moment the driver was on his own side of the road and the instant he was struck, thus excluding the existence of any time in which the witness himself could have crossed the center line. It was therefore the opinion of this court that the driver's testimony was necessarily tantamount to a direct statement that he was wholly in his proper traffic lane at the time of the accident. In this case, however, we have no such evidence. The two witnesses whose attention was arrested by the noise of the collision observed the scene very soon but not "immediately" after the impact, and it is a matter of common recognition that where we are concerned with inches a split second on the highway makes a great deal of difference.

█ Physical evidence alone may, of course, support a theory as to the point of impact sufficiently to authorize its submission to the jury. Stark's Adm'x v. Herndon's Adm'r, 1942, 292 Ky. 469, 166 S.W.2d 828; Abell v. Whitehead, 1936, 266 Ky. 764, 99 S.W.2d 770. But in each of the cited cases the marks and debris left in the road "conclusively" located the accident. In neither of them did the sufficiency of the evidence stand or fall only on the positions of the vehicles after the accident. We do not hold that physical evidence, standing alone and uncontradicted by other evidence, must in the absolute sense be "conclusive" in order to support a case, but certainly it must substantially support a definite conclusion, excluding all reasonable conflicting hypotheses.

█ It has been said that violent impacts of moving bodies sometimes have freakish effects. C. L. & L. Motor Express Co. v. Achenbach, 1935, 259 Ky. 228, 82 S.W.2d 335; Ashland Oil & Refining Co. v. Brashear, Ky.1952, 251 S.W.2d 288, 290. It is virtually impossible to reconstruct, even roughly, the dynamics of an automobile accident. Cf. Schoen v. Plaza Express Co., Mo.Sup.1947, 206 S.W.2d 536, 539. This court has yet to see the case where it can be done post factum from the positions of the vehicles. There are simply too many unknown and unknowable factors. To say that the positions of the truck and car off to one side of the road prove the accident occurred on that side of the center line of the highway requires conjecture. That circumstance alone is not of enough substance and reliability to authorize a submission to the jury.

The judgment is affirmed.