Billy Ray WELLS, Appellant,

v.

Gary L. CONLEY, by Glen Conley,
next friend, etc., Appellees.

Court of Appeals of Kentucky.

Dec. 4, 1964.

J. K. Wells, Eugene Rice, Paintsville, for appellant.

W. B. Hazelrigg, R. B. Harrington, W. A. Johnson, Paintsville, for appellees.

CULLEN, Commissioner.

In midafternoon on March 22, 1962, Billy Ray Wells was alone in his Cadillac automobile eastbound on Highway 460 about six miles west of Paintsville, and Carol Saylor, with Thurman Blair and Gary Conley as his passengers, was westbound in a pickup truck. The Cadillac of Wells and the truck driven by Saylor collided, killing Saylor and Blair and injuring Conley and Wells. Blair's estate and Conley sued both Wells and the Saylor estate, and Wells and the Saylor estate cross-claimed against each other. Judgments on the jury's verdict were for Conley $5,437.67, for the Blair estate $15,000.00 and for the Saylor estate $16,000.00, all against Wells alone.

Wells' appeal lists two complaints. First, that the State Trooper, the investigating officer, was permitted to give his theory as to the paths of the two vehicles leading up to the collision, and their point of impact, based on the positions of the vehicles after the accident and on gouge marks in the east-bound traffic lane; and second, that the two passenger plaintiffs were each given three peremptory jury challenges.

Both of these complaints are well taken.

Conley and Wells were the only surviving eyewitnesses of the actual collision, and each testified that the other's vehicle was on the wrong side of the road. After the col-

lision the vehicles came to rest with the Saylor truck almost entirely off the road on the south berm, pointed south, and the Wells Cadillac a few feet to the west of the truck, crossways of the highway, pointed south, with its rear wheels slightly north of the center line.

The State Trooper was permitted, over strong objection, to testify that in his opinion the vehicles collided in the north (west-bound) lane and that immediately prior to the collision the Cadillac was entirely in the north lane (on its wrong side of the road). He also was permitted to display to the jury a diagram he had prepared showing the positions and paths of the vehicles before the collision according to his opinion.

■ The Trooper stated that in forming his opinion he took into consideration three facts, the first of which was the position of the vehicles after the collision. (The other two were the gouge marks and the nature of the damages to the vehicles.) It is apparent from his testimony that he *assumed* that the vehicles moved only a few feet after the collision and that the point of impact was only a few feet from the place where the vehicles came to rest. (There was no debris nor were there any skid marks to identify the point of impact.) His opinion was that since gouge marks in the pavement beneath the Cadillac appeared to have been made by a north to south motion, the Cadillac was moving from the north side of the road to the south when it made the marks. He *assumed* that the collision occurred immediately before that movement.

The *assumption* made by the Trooper was a vital structural component of his opinion; without it his whole opinion would collapse. If the assumption was invalid or merely conjectural, his opinion failed of the required factual basis for an expert opinion. See Annotation, 66 A.L.R.2d 1048.

We think it is possible that the vehicles collided, in the east-bound lane, some distance *east* of the point where the vehicles came to rest; that the Cadillac spun around and went west for a ways in the west-bound lane and then turned sharply and came to rest across the east-bound lane; and that the truck, after the collision, continued for a distance down the road and then spun around and came to rest on the berm. (This would be consistent with Wells' testimony that he thought the collision occurred farther east than would be indicated by the position of the vehicles after the collision.) It also is possible that the collision occurred, in the east-bound lane, *west* of the point where the vehicles came to rest; that the Cadillac went over into the west-bound lane and then spun to the right and came to rest; and that the truck was turned completely around by the collision, went in the opposite direction for a ways, and then turned sharply or spun again and ended up on the south berm. The mere fact that both vehicles may have been in the west-bound lane immediately before making the gouge marks observed by the Trooper does not establish that they collided directly north of the gouge marks.

In Steely v. Hancock, Ky., 340 S.W.2d 467, at 470, we said:

"It has been said that violent impacts of moving bodies sometimes have freakish effects. C. L. & L. Motor Express Co. v. Achenbach, 1935, 259 Ky. 228, 82 S.W.2d 335; Ashland Oil & Refining Co. v. Brashear, Ky.1952, 251 S.W.2d 288, 290. It is virtually impossible to reconstruct, even roughly, the dynamics of an automobile accident. Cf. Schoen v. Plaza Express Co., Mo. Sup.1947, 206 S.W.2d 536, 539. This court has yet to see the case where it can be done post factum from the position of the vehicles. There are simply too many unknown and unknowable factors. To say that the positions of the truck and car off to one side of the road prove the accident occurred on that side of the center line of the highway requires conjecture. That circumstance alone is not of enough substance and reliability to authorize a submission to the jury."

It is our opinion that the position of the vehicles after the collision did not warrant the assumption made by the Trooper (that the vehicles moved only a few feet after colliding), and since his opinion was based on that assumption the opinion lacked the required factual basis for an expert opinion.

Our holding in this case is in no sense inconsistent with Sellers v. Cayce Mill Supply Company, Ky., 349 S.W.2d 677, because there the Trooper's opinion was based on observed facts and not on conjectural assumptions.

We think it was proper for the State Trooper (having had training and extensive experience in the investigation of automobile accidents) to state his opinion, from his examination of the damage to the vehicles, that they struck at a certain angle; also, he could state his opinion, from his examination of gouge marks in the highway and tar or asphalt residue on the bottoms of parts of the vehicles, that the vehicles were moving in a certain direction when the gouge marks were made, and that some of the marks were made by one vehicle and some by the other. These opinions were based on observed facts and involved the application of expert training and experience to such facts. But none of the observed facts would warrant an expert or anyone else to reach the conclusion here reached by the State Trooper, that the vehicles must have collided a few feet north of the point where the gouge marks appeared. (The vehicles very well could have jumped and bounced for a considerable distance before nosing down to make gouge marks. Eyewitnesses to a recent head-on collision near Louisville reported that one of the vehicles bounced in the air so high that a following vehicle passed completely beneath it.)

The judgments must be reversed because of error in admitting the State Trooper's opinion and diagram as to the point of impact and the paths of the vehicles before the collision.

As concerns the second ground of error raised by the appellant, it is our opinion that it was error to give the two plaintiff passengers three jury challenges each. True they each filed separate suits and there was a plea of contributory negligence against each. Even so, their positions in the trial were identical and in no way antagonistic to each other. In fact they were represented by the same counsel.

The judgments are reversed with directions to grant a new trial.