**Evelyn BENTON et al., Appellants,**

**v.**

**Dillard PARKS' ADMINISTRATOR (Dale Parks), Appellee.**

Court of Appeals of Kentucky.

Oct. 29, 1954.

McCann, Sledd & McCann, Lexington, for appellants.

J. Douglas Graham, Campton, for appellee.

CULLEN, Commissioner.

Evelyn Benton, while driving an automobile owned by her brother, Edwin Benton, struck and killed Dillard Parks, a four-year-old boy. In an action for wrongful death, the boy's administrator recovered judgment for damages in the amount of $10,000 against Evelyn and her brother, and they have appealed.

The primary contention of the appellants is that they were entitled to a directed verdict, because there was no substantial evidence of negligence in the operation of the automobile.

The accident occurred around 11:00 a. m. on Sunday, March 1, 1953 in Wolfe County, on Kentucky Highway No. 15, which runs north and south. The Benton automobile was traveling towards the south. The day was clear and the sun was shining. The highway is straight for a distance of some 300 or 400 yards in each direction from the point of the accident. The highway runs along the side of a hill at this point, and on the west side of the highway there is a steep bank down to the bottom land some 25 feet below the level of the highway. Along the west side, extending for a distance of some 500 feet, there is a row of guard posts, about two and one-half or three feet tall. The guard posts stand three to three and one-half feet from the edge of the paved surface of the highway, the space between constituting the shoulder of the roadway. Opposite a house on the east side of the road there is a path leading down the bank to the bottom land below the road on the west side. The Parks boy was struck at a point on the west side of the highway, about two feet from the edge of the pavement, and about 30 feet south of the entrance to the path.

On the morning of the accident, the Parks family had come to visit a Smith family, who lived in the house on the east side of the highway above mentioned. About one hour before the accident, Mrs. Parks took her four children and some of the Smith children, all of tender age, across the highway and down the path to the bottom to play. She then left them and returned to the house. None of the other children, and none of the people in the house, saw the automobile strike the Parks boy, and none of them could testify as to where the boy was immediately before the accident.

The Benton car was traveling towards the south, in the west traffic lane. There were three young people in the car besides Evelyn Benton, the driver; one in the right front seat and the other two in the back seat. Evelyn testified that she was looking at the road ahead but did not see the Parks child as she approached the point of the accident; that just as the car hit the child she "saw a little object" which was "moving in pretty fast." She further testified that it was impossible to see the child before he was hit.

Withrow Morris, who was riding in the right front seat, testified that he was watching the road ahead and the adjoining area; he saw some children playing in the bottom some 150 yards from the highway, but he did not see any child coming up the path; just at the moment of the accident he "saw a glimpse of something and my first impression was that a child over the bank had thrown a stick or ball up and hit the car;" he didn't know it was a child the car had hit; if the child had been along the highway as the car approached he would have seen it; the child "wasn't standing there" because "I would have seen it if it had been there."

Bonnie Morris, who was riding in the left rear seat, saw the children playing "over in the field," but she did not see the Parks child "near the highway;" she did not see the child before the impact.

Elbert Spencer, who was in the right rear seat, did not see any child on the road nor did he observe the children in the bottom; when asked what first attracted his attention to the Parks child he said, "Just as we hit I saw the glass fall out. We was going up through there and all at once it was just like something thrown out and then it jumped up."

There was no evidence of excessive speed and no attempt to show any negligence of the Benton girl other than in failing to maintain a proper lookout.

Recognizing the duty of a motorist to keep a lookout for young children within the immediate vicinity of a highway and to anticipate the propensity of such children to suddenly dart or run into the road, Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897, the question in the case before us is whether there was sufficient evidence to establish the fact that the child was in a position along or near the highway where in the exercise of ordinary care he could have been seen so as to

raise the duty of anticipating that he might dart or run onto the highway.

The evidence suggests the possibility that the child was standing, walking or running along the shoulder of the highway, or was coming up the path, in a position where he could and should have been seen as the car approached. However, equally plausible possibilities are that he was standing, kneeling or squatting behind one of the guard posts, or had crawled up the bank south of the path, so as not to be visible until the moment he darted out in the road. The jury could only engage in conjecture as to where the child was when the car approached, and there is no basis in ordinary human experience for concluding that it was much more probable that he was in a position where he could have been seen than that he was in a position where he could not have been seen.

We invoke the familiar rules that a finding of negligence cannot be based on mere conjecture or guesswork, and that where the evidence is equally consistent with no negligence as it is with negligence, it is the duty of the court to direct a verdict for the defendant. McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427.

It is our opinion that the court erred in failing to direct a verdict for the defendants, and for that reason the defendants are entitled to a new trial.

Another question raised on this appeal, which may arise again in the event of a new trial, concerns the liability of Evelyn Benton's brother, Edwin, as owner of the car involved in the accident. His liability was predicated upon subsection (3) of KRS 186.590, which imposes liability upon the owner of a motor vehicle for negligence of a minor under 18 who is driving with the owner's permission. (Evelyn was 17 years old.) Edwin maintains he should be relieved of liability, under subsection (2) of KRS 186.590, because he carried liability insurance constituting proof of financial responsibility.

KRS 186.590 consists of three subsections. The first imposes liability on the person who signs the driver's license application of a minor under 18. The second relieves such person of liability if he has deposited proof of financial responsibility in accordance with KRS Chapter 187. The third imposes liability upon the owner who permits a minor to drive. Subsection (2) specifically applies only to the person who signs the minor's application, and we can find no basis for holding that it applies as well to the owner who permits the minor to drive. Therefore, Edwin's furnishing of proof of financial responsibility did not relieve him of his imputed liability.

The judgment appealed from was entered against Evelyn Benton, a minor, without her having been represented by a regular guardian and without a guardian ad litem having been appointed for her. Section 36, Civil Code; see now C.R. 17.03. We assume that upon the remanding of this action there will be no attempt to proceed further without the appointment of a guardian ad litem.

The judgment is reversed, for proceedings in conformity with this opinion.