William THOMAS et al., Appellants,

v.

Eddie Gene GATES, Appellee.

Cozette M. THOMAS, as next friend of
Thea Joyce Thomas, Appellant,

v.

Eddie Gene GATES, Appellee.

Court of Appeals of Kentucky.

Feb. 25, 1966.

James S. Wilson, Jr., Paris, for appellants.

Herbert D. Sledd, Lexington, Royce Pulliam, Cynthiana, for appellee.

CULLEN, Commissioner.

Thea Joyce Thomas, a seven-year-old child, was severely injured when struck by an automobile driven by Eddie Gene Gates, while she was undertaking to cross a street in the outskirts of the city of Paris, Kentucky. Actions were brought against Gates to recover for her personal injuries and for the damages incurred by her parents. Upon a consolidated trial the jury returned a verdict for the defendant. Judgment was entered dismissing the actions, from which judgment the plaintiffs have appealed, claiming error in the refusal of the court to permit portions of a deposition to be read, and error in connection with the instructions.

The accident occurred around 6:00 p. m. on a day in August 1962, on the Georgetown Road just inside the city limits of Paris. The sun was shining and the road was dry. The child was struck by the left front of the car in approximately the center of the street. The defendant testified that he did not see the child at all until the moment of impact. His wife, riding in the right front seat, said she saw the child for the first time in front of the right front fender running to the left. No disinterested witnesses saw the child in the act of crossing the street. The child herself, who did not take the stand but whose deposition was read in part, said at one place in her deposition that she was crossing the road from the motorist's right to his left, but in other places she said she did not know whether she was crossing in that or in the opposite direction.

The evidence for the plaintiffs, consisting mainly of testimony of residents of a housing project on the left side of the road and of an employe and a customer of a gasoline service station on the right side, was sufficient to warrant a finding that the child had been in the yard of an apartment house on the left side of the street and was crossing the street from left to right when struck. The contention of the defendant was that the child had been in the service station and was crossing from right to left. This contention was supported only by (1) the defendant's stated conclusion that the child must have come from the right because if she had come from the left he would have seen her; (2) his wife's testimony that the child when she first saw her was at the right front fender running to her left; and (3) the statement at one place in the child's deposition that she was going from the service station to the other side of the street.

The appellee maintains that any errors that may have occurred on the trial could not be considered prejudicial because he was entitled to a directed verdict. This is on the theory that this case is comparable to Benton v. Parks, Ky., 272 S.W.2d 466, in which

it was held that the defendant motorist was entitled to a directed verdict because the plaintiff's evidence did not show that the child "was in a position along or near the highway where in the exercise of ordinary care he could have been seen so as to raise the duty of anticipating that he might dart or run into the highway" (272 S.W.2d 467). The opinion in the Benton case points out that under the evidence the possibility that the child was in a position where he could have been seen was equally plausible with the possibility that he was in a position where he could not have been seen.

■ In our opinion the preponderance of the evidence in the instant case is that the child, whether to start with she was on the left or on the right side of the road, was in a position where she could have been seen. The only evidence of a place of possible concealment consisted of a photograph taken a few days after the accident, showing a "sandwich" signboard standing near the curb on the service station apron, and of testimony that there were two cars receiving gasoline at the station. However, several witnesses who were asked about the signboard could not say whether it was there on the day of the accident, and no one testified positively that the cars being serviced were close to the street so as to constitute possible places of concealment. Furthermore, the defendant himself would not say there was any obstruction, in the form of a signboard, automobile or otherwise, that did or could have concealed the child from his view on the service station side of the road.

A further distinction between this case and the Benton case lies in the fact that there the child had ventured into the road a distance of only two feet from the edge of the pavement when struck, whereas here the child had reached the center of the road before being hit.

It is our opinion that the defendant was not entitled to a directed verdict.

■ The appellants' first claim of error relates to the refusal of the trial court to permit the appellants' counsel to read a portion of the pre-trial deposition of the injured child, who did not testify in person at the tiral. During the presentation of the defendant's case the latter's counsel read the portion of the child's deposition in which she said she was crossing from the service station to the other side of the road when she was hit. This reading took place just before an evening adjournment of the trial. The next morning the defendant introduced the deposition of one more witness and then rested his case. The plaintiffs then sought to read other portions of the child's deposition, in which she said she did not know whether she was coming from or going to the service station when she was hit. The court would not permit this to be done, on the ground that "the offer to read the testimony of the infant plaintiff should have been made immediately following the reading by the defendant's attorney of portions of the * * * deposition * * *."

Under CR 26.04(4), when one party has read part of a deposition, the other party is given the right "later" to read any other part relevant to what first was read. On its face the rule does not restrict "later" to the point of time at which the first party has just concluded his reading. It may be that the trial court, in the interest of orderly procedure, could require the second party do his reading immediately after the conclusion of the first party's reading, Clay CR 26.04(4), Comment, but we think the court then should so warn the parties, rather than to apply such a requirement retrospectively without warning. It is our opinion that the court erred in the instant case in refusing to permit the reading of the other parts of the deposition. And we think the error was prejudicial because the child's statement first read, that she was coming from the service station, was the only direct evidence of that fact, and the jury very well might have reached a different decision had they heard the child's other statements to the effect that she did not know

whether she was coming from or going to the station.

The appellants complain also of the instructions, of which appropriate and adequate objections were made. The verdict stated that the jury found for the defendant under Instruction No. 2. That instruction was as follows:

"If you believe from the evidence that the plaintiff, Thea Thomas, suddenly ran into the path of the car driven by the defendant so suddenly and so near thereto that had the defendant been operating said automobile at a reasonable rate of speed he could not, by the exercise of ordinary care and the use of the means at his command, have brought his vehicle to a stop, slackened its speed or changed its course in time to have avoided striking the plaintiff, then the law is for the defendant and you will so find."

Instruction No. 1 imposed upon the defendant various duties, including the duty "to keep a lookout for persons and vehicles upon the street;" and the duty to exercise ordinary care to avoid injury to the plaintiff "if you believe from the evidence that the plaintiff, Thea Thomas, was near the path of the automobile and that she was seen by the driver, or could have been seen by him in the exercise of a reasonable lookout duty."

Although there is some confusion in our cases, we think the law applicable to the situation in which a small child darts into the street is this: (1) If the child, before running into the street, was in a position along or near the street where in the exercise of ordinary care the motorist should have seen the child, the motorist has the duty to anticipate that the child may suddenly dart into the street and he must be prepared for that contingency. Potts v. Krey, Ky., 362 S.W.2d 726; Benton v. Parks, Ky., 272 S.W.2d 466; Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897. (2) If the child suddenly appears *from a*

*concealed position* so near to the path of the vehicle that an ordinary motorist, observing his duties as to speed, lookout and control, could not have avoided striking the child, the motorist is not liable. However, the motorist is not exonerated if the place of concealment was such a distance from the path of the motorist that the child while traveling that distance, should have been seen and avoided. Benton v. Parks, Ky., 272 S.W.2d 466; Potts v. Krey, Ky., 362 S.W.2d 726; Lehman v. Patterson, 298 Ky. 360, 182 S.W.2d 897; Dixon v. Stringer, 277 Ky. 347, 126 S.W.2d 448.

In stating that the foregoing is the law applicable to *small* children we mean children *appearing* to be in the age group whose members in the experience of ordinarily prudent men are known to have a propensity to dart into the street. This would embrace as a matter of law those so young as to be incapable of contributory negligence, that is those under seven years of age. In the judgment of the jury it might also include older children. However, if such an older child *appearing* to be in the "darting" age group, was in fact of an older age and is found by the jury not to have exercised the care of an ordinarily prudent child of his age and experience (see Williamson v. Garland, Ky., decided February 11, 1966), recovery should be denied on the ground of contributory negligence, notwithstanding the negligence of the motorist in violating his duty of lookout and anticipation. (In the instant case the child was seven years of age, but no question of contributory negligence was raised.)

In our opinion the instructions here complained of were erroneous in that they failed to make a clear distinction between mere sudden darting from the side of the street and sudden appearance from a *concealed position near the path of the vehicle*. It is true that Instruction No. 2 uses the words "sudden appearance" but it does not inform the jury what are the elements of a "sudden appearance." It also is true that

Instruction No. 1 says that if the child was near the path of the vehicle and should have been seen, it was the duty of the driver to "exercise ordinary care * * * to avoid injury" to her. But it does not say that the motorist is liable if the child suddenly darted from the place where she was seen; on the contrary it throws in an "ordinary care" escape clause which would permit a finding for the motorist even if he had seen the child before she started to dart. And when the two instructions are read together they easily may be interpreted as exonerating the motorist in case of any sudden movement by the child, even one from a place a substantial distance from the motorist's path.

The appellee maintains that Instruction No. 2 is in the form approved in Stanley's Instructions to Juries, Sec. 109(3). It is not, because the improved form contains the words "suddenly ran from behind the wagon"—that is, from a place of *concealment*.

The judgment is reversed with directions for further proceedings in conformity with this opinion.